## MARTENSEN v. C., R. I. & P. R. Co.

1. **Railroads:** INJURY TO EMPLOYE: NEGLIGENCE.  Where an employe of a railroad company needlessly places himself in a dangerous position on one of the company's moving cars, when he is in the performance of no duty to the company, and he is injured in consequence, he cannot recover for such injury from the company.

*Appeal from Pottawattamie Circuit Court.*

TUESDAY, APRIL 17.

THIS is an action to recover damages for a personal injury. There was a trial by jury, and a verdict and judgment for the defendant.  Plaintiff appeals.

*Mynster & Adams*, for appellant.

*Wright & Baldwin*, and *Wright, Cummins & Wright*, for appellee.

ROTHROCK, J.—The plaintiff, a laborer in the employ of the defendant, was in a stock car, spreading sand which had been thrown in the car.  While he was in the car, thus employed, it was attached to an engine and put in motion to be taken to the stock yards.  While it was in motion, the plaintiff climbed out of the car, and stood upon what is called the oil-box, which is a kind of covering for the end of an axle of a car, and maintained himself by holding on to the slat above. While in this position, the train moved along to a switch, and was reversed, and it ran backward upon another track. While moving upon this last track, the train passed a freight platform, and plaintiff was struck by some "running boards" which projected beyond the edge of the platform, and was thrown under the wheels and injured.  These running boards are movable, and are used to bridge over the space between the cars and the platform, in order to load and unload freight.

The plaintiff claimed that he was injured by the negligence of the defendant in permitting the "running boards" to remain projecting beyond the platform, and also by the negligent operation of said train.

The plaintiff in his testimony stated that, when he climbed outside of the car, the speed of the train had been reduced in order to make the switch, and that he intended to get off at the switch, but that the train did not stop to enable him to do so, and that he remained in his position, standing on the oil-box until past the platform, where he was injured. In addition to the general verdict, the jury answered certain interrogatories which the court propounded at the instance of the parties. Those asked by the plaintiff were as follows:

*Int. 1.* At what rate of speed was the defendant's train, with the stock car in question, running, on the evening when plaintiff was injured? *Ans.* About four miles per hour.

*I. 2.* How long did defendant's train ordinarily stop in making the number one switch? *A.* From one to two minutes.

*I. 3.* Did the train in question stop at said switch on this occasion as they ordinarily did? *A.* Yes.

*I. 4.* Is the oil-box in question a safe place to ride on the car in question while being operated in said yard? *A.* No.

*I. 5.* Would the plaintiff have been in any danger in riding on the oil-box on said car, had it not been for the running boards projecting beyond the platform? *A.* Yes.

*I. 6.* Did the plaintiff act with ordinary care and prudence in attempting to get off said train at said switch? *A.* No.

*I. 7.* Did plaintiff have reasonable cause to believe that he would be able to get off said car at said switch? *A.* Yes.

*I. 8.* If said train had stopped the usual time at said switch, would plaintiff have been able to get off with safety? *A.* Yes.

The questions asked at the instance of the defendant were as follows:

*I. 1.* Was the plaintiff in the stock car when the train started from the sand pile? *A.* Yes.

*I. 2.* Did the train to which said stock car was attached run from the sand pile on track No. 4 up to and on track No. 1? *A.* Yes.

*I. 3.* Did said train stop on track No. 1 between one and two minutes while making the switch from track No. 4 thereon? *A.* Yes.

*I. 4.* Did track No. 1 lead west from the switch to defendant's stock yard? *A.* Yes.

*I. 5.* Did the train, after being switched from track No. 4 to track No. 1, start west on said track toward defendant's stock yard? *A.* Yes.

*I. 6.* Did plaintiff know that said train was going from the sand pile to defendant's stock yard to be reloaded thereat? *A.* Yes.

*I. 7.* Was the plaintiff familiar with the tracks, buildings, platform, stock yards and appurtenances in and about defendant's yard where the accident occurred, and the manner of switching cars therein? *A.* Yes.

Counsel for appellant complain because they were not permitted by the court to prove that it was common and usual for employes to ride on the oil-box of the cars while performing yard-work, and that it was a rule of defendant to permit parties working in their yards to ride on what is known as the oil box. Without determining whether or not an unnecessary and dangerous custom may in any case be relied upon as excusing an injured party from the charge of contributory negligence, we think the ruling upon this evidence was correct, for two reasons: *First.* The offered evidence would not have shown that it was customary for employes to ride on an oil-box, while passing a platform in close proximity to the car. The jury found that the plaintiff was in danger in his position upon the car, even if the "running boards" had not been projecting beyond the platform. The evidence shows that the space between the car and the platform was from fourteen to eighteen inches. *Second.* The plaintiff claims that he intended to get off at the switch, because it was nearer the point

he intended to go after leaving the train, and the jury have found that the train stopped at the switch, and that plaintiff could have left the car with safety at that point. It therefore appears that remaining on the car and riding past the platform was wholly unnecessary, and that plaintiff was performing no duty to the defendant in so doing.

The plaintiff's counsel complain of the instructions given by the court to the jury, and of the refusal to give instructions asked by the plaintiff. Under the facts in this case, we do not think it necessary to enter upon any discussion as to the law governing the rights of the parties. We think the facts, as the plaintiff claims them to be, show, without question, that he needlessly put himself in a dangerous place, and that no one except himself is to blame for the consequences.

The idea that the employes on the engine saw him in his perilous position, and made no effort to avert the accident, is not well founded. The jury might possibly have found that the fireman saw him, but there was no evidence that he saw the projecting running boards. The plaintiff himself did not see them.                                     AFFIRMED.