# Lehigh Valley Railroad Co. *versus* Greiner.

1. Where one negligently and without excuse places himself in a position of known danger and thereby suffers an injury at the hands of another, either wholly or partially by means of his own act, he cannot recover damages for the injury sustained. The contributory negligence which prevents recovery for an injury, however, must be such as co-operates in causing the injury, and without which the injury would not have happened.

2. The true test of contributory negligence is found in the affirmative of the question, Did the plaintiff's negligence directly contribute, in any degree, to the production of the injury complained of? If it did, then there can be no recovery; if it did not, it is not to be considered.

3. An employe of a railroad company, while riding from his work on a train, composed of the engine, tender, and a gondola car, fitted up with plank seats, sat on the narrow platform in the rear end of the tender, with his legs and feet hanging over the edge. He had been warned that this was a dangerous place to ride, but gave no heed to it. While he was thus sitting an engine ran into the gondola, raised it up and pushed it forward, so that its bumpers struck him, and so injured him that he died. *Held*, in an action on the case by his widow and minor children, that they could not recover damages for his death, because he had been guilty of contributory negligence; and that the Court, upon request, should so have instructed the jury.

April 12th, 1886. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN and CLARK, JJ.

ERROR to the Court of Common Pleas of *Luzerne county:* Of July Term 1885, No. 114.

[Lehigh Valley Railroad Co. *v.* Greiner.]

This was an action of trespass on the case brought by Ernestina Greiner, widow, Mary, Carl, John Nelson and Frederick Otto, heirs and legal representatives of John Charles Greiner, deceased, by their mother and next friend, Ernestina Greiner, against the Lehigh Valley Railroad Company to recover damages for the death of the said John Charles Greiner, alleged to have been caused by the negligence of the defendant. Plea, not guilty.

The following facts appeared on the trial, before RICE, P. J.:

John Charles Greiner was employed by the defendant company at its repair shops in Wilkes-Barre, and had worked there about five or six years. He and other employés had made an arrangement with one of the engineers, and a fireman of the company, who had charge of a shifting engine, by which the latter, after their day's work was done, carried the men down to their respective homes between the shops and South Wilkes-Barre, a distance of about two miles. For this service the men paid a small sum monthly to the engineer and fireman, but nothing to the company. The company knew of and permitted this, and Mr. Drumheller, the master mechanic, in charge of the shops, usually rode down on the engine, going to his own home. The train was an irregular one, without scheduled time. At the time of the accident, and for a long time before, it consisted of the engine, tender (or tank car) and a "gondola" or box car, a long open car, supplied with seats of two and a half inch plank fastened and secured at the sides. This car stood on a truck eleven inches higher than the truck of the tender, or tank car. Greiner was in the habit of riding on the rear end of the tender, sitting on the platform, ten inches wide, with his feet dangling over the side or placed in the iron step depending from the side of the platform. He had been repeatedly warned that this was a dangerous place. Drumheller had ordered him off and told him not to sit there. The other men who used the train had also warned him that this was a dangerous place. He was so told by seven witnesses, and told in both German and English. His general reply was that he could take care of himself, could get off easier, that it was nobody else's business, etc. On the afternoon of the day when the accident happened, the train started from the shops as usual except that it was about an hour earlier. There was room in the gondola car and in the tender where some of the men, then, and habitually, sat. The engine stopped as usual at the places where the men got off, not at any regular stopping place or stations. It stopped at the intersection of Northampton street and let some of the men off, and then went on past the station of the company, which then stood a short distance below Northampton street. The plat-

form, beginning near this street, extended to and beyond the station proper, and to and beyond a small dwelling, and ended at the private telegraph office of the company, a distance of about two hundred feet below the station. At this last named boint the train stopped to take off certain articles that had peen brought down from the shops. Following this train was an engine, No. 134, which had been taken from the shops without authority, by a fireman (one Carman,) who was running it down for his own accommodation to a switch below the station. He was travelling very slowly, saw the train ahead, but supposed it to be moving slowly also, reversed his engine some forty yards off, but miscalculated his distance, · and the grade being a down grade at that point, came on and struck the train, with (as he testified) not as much force as is usually, or frequently, used in coupling cars. The gondola, or box-car, being higher than the tank-car, was tilted up so that its forward bumpers were pushed over and upon the platform of the latter, and Greiner, who was sitting in the position already described, upon the platform, with his feet dangling over the side, was caught between the side of the car and the bumpers of the gondola, and so injured that he died within a few hours. No one else on the train was hurt, although some of the men were thrown off their seats. The engine struck with so little force that it did not rebound, and neither it nor the gondola or tank car was injured in the least.

The defendant presented, *inter alia*, the following points:

4. That from the uncontradicted evidence the deceased was, at the time of the accident, in a place of known danger, where he persisted in remaining in spite of repeated warnings, and that his negligence contributed to cause the accident by which he lost his life, and therefore the plaintiffs cannot recover.

5. That under all the evidence in the case the plaintiffs cannot recover.

Answer. These two points we negative. (Fourth assignment of error.)

6. If the jury believe the testimony of the witnesses in the case, the following facts have been established:

1. That at the time John Charles Greiner was killed he was sitting between the tank car and gondola, on a platform ten inches wide.

2. That the position was dangerous.

3. That he had been frequently warned not to occupy that place, because it was dangerous.

. That under such a state of facts the said Greiner's conduct contributed to bring about the injury that caused his death, and therefore the plaintiffs cannot recover in this suit.

[Lehigh Valley Railroad Co. *v.* Greiner.]

Answer. We decline to charge as requested in that point, not because the jury may not be justified in inferring that the deceased was guilty of contributory negligence from these facts, but because it undertakes to have the Court state as matter of law that contributory negligence would result from these facts, when we think it should be submitted to you as a question of fact. The point is therefore answered in the negative. (Fifth assignment of error.)

Verdict for the plaintiffs in the sum of $1,000 and judgment thereon, whereupon the defendant took this writ, assigning for error, *inter alia*, the answer of the Court to the defendant's fourth, fifth and sixth points.

*J. V. Darling* and *H. W. Palmer* (*E. P. Darling* with them), for the plaintiff in error.—The defendant was guilty of contributory negligence: R. R. Co. *v.* Jones, 5 Otto, 439; Camden & Atlantic R. R. Co. *v.* Hoosey, 3 Out., 492; Daggett *v.* Ill. Cent. R. R. Co., 34 Iowa, 28; Little Rock & Fort Smith R'y Co. *v.* Miles, 13 Am. & Eng. R. R. Cases, 10.

In our own state it has been held contributory negligence for a passenger to ride in a baggage car, even with the assent of the conductor in charge of the train: Penn. R. R. Co. *v.* Langdon, 11 Nor., 21. The rule laid down in that case is the same as that adopted by Mr. Wharton, Whart. on Neg., § 367, and both the rule, and the reasoning of Mr. Justice PAXSON in his opinion, have received the unqualified approval of the later text-writers: See Beach on Cont. Neg., §§ 54, 55.

In the case just cited, the Court say, "The baggage car is a place of known danger. In this respect it differs from the cow-catcher and the platform only in degree."

So in the case of a passenger who allows his arm to protrude out of the window of a car, drawn by a locomotive engine, he is guilty of contributory negligence.

Where a traveller voluntarily puts his arm out of a window, it must be regarded as negligence *in se.*; and when that is the state of the evidence, it is the duty of the Court to declare the act negligence in law. The negligence consisted in putting his limbs where they ought not to be, and where they were liable to be broken, without his ability to know whether danger was approaching: Pitts. & Conn. R. R. *v.* McClurg, 6 P. F. S., 298.

On the same general point, see: Kentucky Cent. R. R. *v.* Thomas, 79 Ky., 160; Houston & Texas Cent. R. R. *v.* Clemmons, 55 Tex., 88; Peoria & R. I. R. R. *v.* Lane, 83 Ill., 448; Taylor *v.* Danville, O. & Ohio R. R. *v.* Bradw., Ill., 311.

The authorities are so fully reviewed in the Penn. R. R. *v.*

Langdon (*supra*) that it is unnecessary to examine them in detail.

"The reasoning of these cases," says Mr. Beach, "applies with equal cogency to the case of passengers riding in any other exposed or unlawful position upon a railway train, and with greater force as the risk increases: Beach on Cont. Neg., 163.

*John Lynch* (*S. J. Strauss* with him), for defendant in error.—Was Greiner guilty of negligence which contributed to his injury?

Wharton on Neg., § 325, lays down the rule, "no matter how negligent I may have been in putting myself in a particular position, I can recover for injuries inflicted on me by a party who could have avoided injuring me by the exercise of the ordinary care which is usual with prudent persons under the circumstances:" Priest *v.* Nichols, 116 Mass., 401: Whart. Neg., §§ 326, 327; Railway *v.* Boudrou, 92 Pa. St., 475; Creed *v.* Pa. R. Co., 86 Pa. St., 139.

To defeat recovery the negligence of the party injured must have been of such a character as to draw on him the hurt: Whart. Neg., § 130.

The doctrine of contributory negligence ceases when the person inflicting the injury was guilty of gross negligence: Whart. Neg., § 131.

The plaintiff's case did not establish negligence on the part of Greiner which contributed to his injury. That was a part of the defence and was therefore for the jury: Weiss *v.* Penn. R. R. Co., 79 Pa. St., 387; Penn. R. R. Co. *v.* Wiber, 76 Pa. St., 157; Schum *v.* Penn. R. R. Co., 16 W. N. C., 305; Johnson *v.* The West Chester & Phila. R. Co., 20 P. F. S., 357; Germantown R. Co. *v.* Walling, 1 Out., 55; Goodrich *v.* Pa. & N. Y. R. R. & Canal Co., 29 How., 50; West Phila. Pass. R'y Co. *v.* Gallagher, 16 W. N. C., 413.

Mr. Justice CLARK delivered the opinion of the Court, October 4th, 1886.

It is a principle of law, well settled in this state, that where a man negligently, and without excuse, places himself in a position of known danger, and thereby suffers an injury at the hands of another, either wholly or partially by means of his own act, he cannot recover damages for the injury sustained. The contributory negligence which prevents recovery for an injury, however, must be such as co-operates in causing the injury, and without which the injury would not have happened: Gould *v.* McKenna, 5 Norris, 302. The true test is found in the affirmative of the question, Did the plaintiff's neg-

ligence directly contribute, in any degree, to the production of the injury complained of? If it did, then there can be no recovery; if it did not, it is not to be considered: Creed v. P. R. R. Co., 5 Norris, 139; Pass. Railway Co. v. Boudrou, 11 Norris, 480.

The question of negligence is ordinarily a question of fact, and ought to be submitted under proper instructions, to the determination of a jury. Where the facts are disputed, where there is any reasonable doubt as to the inference to be drawn from them, or when the measure of duty is ordinary and reasonable care, and the degree varies according to the circumstances, the question cannot, in the nature of the case, be considered by the court, it must be submitted to the jury: Gramlich v. Wurst, 5 Norris, 78. But, where the facts and the inferences therefrom are undisputed, where the precise measure of duty is determinate, the same under all circumstances, where a rule of duty in a given exigency may be certified and accurately defined, the question is for the court, and not the jury: McCully v. Clark, 4 Wr. 406; Reeves v. Railroad Co., 6 Casey, 454; Schum v. P. R. R. Co., 11 Out., 8. It has been held in a number of cases that it is the plain, imperative duty of a traveller, before crossing the track of a railroad, to stop, look, and listen for approaching trains, and his failure so to do in case of injury has been declared, not to be evidence of negligence merely, but negligence *per se*, and therefore, a question for the court: Railroad Co. v. Heilman, 13 Wright 60; Penn. R. R. Co., v. Beale, 23 P. F. S. 504; Railroad Co. v. Ritchey, 6 Out., 425.

So, in O'Donnell v. Allegheny Vall. R. R. Co., 9 P. F. S., 239, it was held that, regardless of the rules of a railroad company, the baggage car of a passenger train is an improper place for a passenger to ride, unless under the circumstances, it appears that he is riding there by the permission of the conductor, and for the benefit of the company. In Penn. R. R. Co. v. Langdon, 11 Norris, 21, it was said the baggage car is a known place of danger; it differs from the cow catcher and the platform, in this respect, only in degree, and a passenger who voluntarily left his proper place in the passenger car of a railroad company, in violation of the rules, to ride in the baggage car, or other known place of danger, could not recover for an injury thus received, partially in consequence of his own act.

So in Camden & Atlantic R. R. Co. v. Hoosey, 3 Out., 492, a passenger, owing to the crowded condition of the cars, was unable to find a seat; although there was standing room inside, he stepped outside under the pretence of finding a seat in another car, but remained upon the platform, where by a

jolt of the cars he was thrown to the ground and injured; it was held that he had been guilty of such contributory negligence as to preclude his right of recovery, and that the court should have so instructed the jury. Assuming for the present, says our brother STERRETT in that case, that the company was justly chargeable with negligence resulting in injury to the plaintiff below, and that under the circumstances he was not guilty of contributory negligence, in passing from car to car in search of a seat while the train was in rapid motion, can it be pretended that it would not be gross negligence in him to voluntarily take a position near the outer edge of the platform, and remain there until, by an ordinary jolt of the car, he lost his equilibrium and was thrown off?"

So in Payne *v.* Reese, 12 W. N. C. 97, an employé of a mining company, whilst engaged in the performance of his duties, fell into a hole in the ground caused by steam escaping from an underground wasteway, and it was held (GORDON J.) that if at the time and place of the injury, the plaintiff saw the steam issuing from the ground, and deliberately walked into it, and was thus precipitated into the excavation, he was as matter of law, guilty of negligence, which contributed to the accident, and that he could not recover.

In Phila. Wilm. & Balt. R. R. Co. *v.* Stinger, 28 P. F. S., 219, it is declared to be the duty of an engineer, when his train is approaching a public highway, if danger is to be apprehended, to give a proper warning by the whistle or otherwise, and that a failure so to do is negligence *per se.* On the other hand, in Penna. R. R. Co. *v.* Barnett, 9 P. F. S., 265, it was said to be negligence to sound the alarm whistle under a bridge, whilst a traveller was in the act of passing over it.

In all these cases the act complained of, whether of omission or commission, was an act unaffected by any circumstance which might vary or shift the standard or degree of care, and in cases of this character when the facts and the inferences fairly arising therefrom are undisputed, the question of negligence is one for the court and not for the jury.

In the case at bar, it is undisputed that Greiner at the time of the injury, was riding on the rear end of the tender, sitting upon the platform, which was only ten inches wide, with his legs and feet extending down over the end of the platform at the side of the tender. This was, of course, a place of known danger; any man of common sense must have known that this was a place of great peril, and especially was this so, on account of the peculiar construction of the gondola and of the tender, of which the deceased had been informed; the former stood upon a truck eleven inches higher than the latter; so that in the event of a slight collision, the truck of the gondola was

liable to mount and ride upon the truck of the tender. As was said in Little Rock, etc. R'y Co. v. Miles, 13 Am. & Eng. R. R. Cases, 10, "there are certain portions of every railroad train which are so obviously dangerous for a passenger to occupy, and so plainly not designed for his reception, that his presence there will constitute contributory negligence as a matter of law, and preclude him from claiming damages for injuries received while in such position; a passenger who voluntarily and unnecessarily rides upon the engine or the tender, or upon the pilot or bumper of the locomotive, or upon the top of a car, or upon the platform, cannot be said to be in the exercise of that caution and discretion which the law requires of all persons who are of full age, of sound mind, and of ordinary intelligence.

The gondola had been fitted up expressly for the purpose; it was provided with seats for the workmen to occupy, and it is not alleged, that there was insufficient room for all; there was no necessity and therefore no excuse for any one, to leave the place provided, to sit upon the narrow platform of the tender. Nor is it disputed, that Greiner had been warned, repeatedly warned, of the danger he incurred. His fellow workmen, on many different occasions, some of them referring to their experience as railroad men, told him not to sit there; that it was a dangerous place; to some, he said he could get off easier, to others, that he could take care of himself, and to others, it was none of their business. Matthew Watt told him it was a dangerous place : he showed him how little it required to raise the gondola over the bumper or platform of the tender in front of it, not more than a couple of inches, and that if the engine should run off the track, or any accident occur, and he should happen to lose his hold and fall off, he was in a place of the greatest danger. The answer he made to this was, "mind your own business."

Mr. Drumheller, the master mechanic, testifies :—

Q. Where do you work?

A. At the Lehigh Valley shops.

Q. What is your business there?

A. Master mechanic.

Q. How long have you been there at work?

A. I have been there since the shop has been built—since '71-'72.

Q. Were you acquainted with Greiner?

A. Yes, sir.

Q. Whether in coming down on that train you had noticed him sitting between the cars?

A. I have, yes, sir.

Q. Did you ever say anything to him on the subject?

· A. I did.

Q. State what you said to him.

A. I told him that was a dangerous place, it was dangerous for him to sit there.

Q. Did you tell·him that more than once?

A. I did.

Q. How many times?

A. I cannot tell you how many times—a number of times though.

Q. Was it a dangerous place?

· A. It was a dangerous place. He was in danger of dropping off on to the rail and having the rear car run over him.

Q. Was it dangerous on any other account?

A. There was danger of being run into—anything like that, the cars colliding, being in between them.

Q. Whether that is not the most dangerous place on the train?

A. I should think so. I should consider it so.

Q. What did Greiner say when you warned him that that was a dangerous place?

A. Oh, he said that he was all safe there; would leave the place reluctantly; that was on one or two occasions he done that.

Q. That is to say when you spoke to him he got out of it?

A. Yes, he got out, but he got out reluctantly; he thought he was safe there—perfectly safe.

Q. That is what he said, is it?

A. Yes, sir.

He was therefore, at the time of the injury, in a place of known danger, he had been repeatedly warned of the fact; he was ordered by his employer, to occupy some other place, which was sometimes sullenly obeyed. He put himself in this place of danger voluntarily, and recklessly and persistently continued to occupy it, in violation of the express direction of Mr. Drumheller, and in disregard of the often repeated warnings of his friends and fellow workmen. It is beyond all contradiction that the occupancy of this place of danger caused or contributed to his death; if he had been sitting on the gondola, or even upon the engine or the tender, he could not have been harmed, the only effect of the collision being to cause the gondola to ride on the platform of the tender, where the deceased was sitting.

Very similar to this, is the case of Railroad Co. *v.* Jones, 5 Otto, 439;—Jones was one of a party of men employed by a railroad company in constructing and repairing its roadway. They were usually conveyed by the company to and from the place where their services were required, and a box-car was

assigned to their use. Although on several occasions forbidden to do so, and warned of the danger, A., on returning from work one evening, rode on the pilot or bumper of the locomotive, when the train, in passing through a tunnel, collided with cars standing on the track, and he was injured. There was ample room for him in the box-car; all in it were unhurt. It was held, that, as A. would not have been injured had he used ordinary care and caution, he is not entitled to recover against the company."

Mr. Justice SWAYNE, delivering the opinion of the Court, says:—" The plaintiff had been warned against riding on the pilot and forbidden to do so. It was next to the cow-catcher, and obviously a place of peril, especially in case of collision. There was room for him in the box-car. He should have taken his place there. He could have got into the box-car in as little, if not less, time than it took to climb to the pilot. The knowledge, assent, or direction of the Company's agent, as to what he did, is immaterial. If told to get on anywhere, that the train was late, and that he must hurry, this was no justification for taking such a risk. As well might he have obeyed a suggestion to ride on the cow-catcher, or put himself on the track before the advancing wheels of the locomotive. The company though bound to a high degree of care, did not insure his safety. He was not an infant nor *non compos*. The liability of the company was conditioned upon the exercise of reasonable and proper care and caution on his part. Without the latter, the former could not arise. He and another who rode beside him were the only persons hurt upon the train. All those in the box-car, where he should have been, were uninjured. He would have escaped also if he had been there. His injury was due to his own folly and recklessness. He was himself the author of his misfortune. This is shown with as near an approach to a demonstration as anything short of mathematics will permit."

If the testimony in this case is true, and it is neither contradictory nor conflicting, nor are the witnesses discredited, Greiner was, without doubt, guilty of the grossest negligence, and the Court should have so instructed the jury.

The 4th and 5th assignments of error are therefore sustained.

The view we have taken of this case renders it wholly unnecessary that we should consider the remaining questions upon the record.

The judgment is reversed.