KANSAS CITY, MEMPHIS & BIRMINGHAM RAILROAD
COMPANY *et al. v.* A. J. WILLIFORD, *Admr.*

(*Jackson,* April Term, 1905.)

1. **RAILROADS.** The engine is the most perilous part of the train; what protection those riding on engine are entitled to.
   The railroad engine is at all-times the most exposed and perilous portion of the train, and persons not in the performance of any duty there, including by express adjudication passengers and baggage masters, riding on the engine, can claim nothing more than protection from injury by the willful, wanton, or intentional act of the carrier and its employees. (*Post, p.* 114.)

   Cases cited and approved: Railroad v. Wilson, 88 Tenn., 318; Railroad v. Bogle, 101 Tenn., 40.

2. **CONTRIBUTORY NEGLIGENCE.** To be determined by the jury, when; and by the court, when.
   While contributory negligence, where the facts are fairly debatable, is a question to be determined by the jury under proper instruction, yet, where the facts are incontrovertible, the question then becomes one for the court. (*Post, pp.* 115-118.)

   Cases cited and approved: Light & Power Co. v. Hodges, 109 Tenn., 333; Warden v. Railroad (Ala.), 10 South., 276, 14 L. R. A., 553; Martin v. Railroad (C. C.), 41 Fed., 125; Judkins v. Railroad, 80 Me., 417; Hickey v. Railroad, 14 Allen, 429; Railroad v. Langdon, 92 Pa., 21; Railroad v. Thomas, 79 Ky., 160; Railroad v. Greiner, 113 Pa., 600; Railroad v. Ray, 70 Ga., 674; Martensen v. Railroad, 60 Iowa, 705; Railroad v. Jones, 95 U. S. 439; Wilcox v. Railroad (Tex. Civ. App.), 33 S. W., 379.

Railroad v. Williford.

3. **SAME.** Proximately causing one's own injury prevents his recovery from another whose negligence also directly contributed to the injury.

Want of ordinary care on his own part proximately contributing to his injury will prevent the injured party from maintaining an action against another who also directly contributed to the injury. (*Post, pp.* 118, 119.)

Case cited and approved: Butterfield v. Forrester, 11 East, 60.

4. **SAME.** Remotely causing one's injury will not prevent his recovery from another whose negligence directly caused the injury.

Where the negligence of the plaintiff remotely contributes to his injury, and he is not altogether without fault, still he can maintain an action for his injury against the defendant whose negligence directly contributes to the plaintiff's injury, or is the proximate cause thereof. (*Post, pp.* 119-124.)

Cases cited and approved: Whirley v. Whiteman, 1 Head, 610; Davies v. Mann, 10 Mees. & Wel., 546; Inland & Coasting Co. v. Tolson, 139 U. S., 551; Railroad v. Ives, 144 U. S., 408; Trow v. Railroad, 24 Vt., 487; Railroad v. Hellenthal, 88 Fed., 116, 31 C. C. A., 414; Gilbert v. Erie Co., 97 Fed., 747, 38 C. C. A., 408; Railroad v. Lee, 9 South., 233.

5. **SAME.** Trespasser on railroad engine is guilty of such contributory negligence as prevents a recovery for his death from a collision at street crossing; case in judgment.

Where a person, without invitation or necessity, stepped upon and occupied the footboard along and at the rear of a switch engine, presumably with the knowledge of the foreman, and without his objection, and was killed by a collision at a street crossing, which was unavoidable by the utmost energies of the engineer, he was guilty of such gross contributory negligence as precludes a recovery, though the engine was running at a speed greatly in excess of that allowed by a city ordinance.

6. **VERDICTS.** For defendant may be directed by trial judge, where there is no evidence to support the action.

It is a proper case for the trial judge to instruct the jury to return a verdict in favor of the defendant, where there is no evidence to support the action. (*Post, p.* 124.)

## FROM SHELBY.

Appeal from the Circuit Court of Shelby County.— J. P. YOUNG, Judge.

C. H. TRIMBLE, for Railroad.

JERE HORN, for Williford.

MR. CHIEF JUSTICE BEARD delivered the opinion of the Court.

This suit was brought by the administrator of one Owen to recover damages in the interest of certain statutory beneficiaries against several railroads, constituting what is called in the record the "Frisco System," for inflicting, as is alleged in the declaration, by actionable negligence, injuries on his intestate which soon after resulted in his death. On the trial of the case there was a verdict and judgment for $6,500 against the defendants, and they have prosecuted an appeal, in the nature of a writ of error, to this court.

It is disclosed in the record that the deceased lived in

Railroad v. Williford.

Mississippi, and during the afternoon of the accident arrived in the city of Memphis in company with one Parker. Soon after their arrival these parties saw, at the corner of Georgia street and Kansas avenue, in the act of pulling out of the yards of the defendant railroads, a switch engine moving backwards, with several freight cars attached. Along the rear end of this engine, which was in front in this movement, there ran what is called a footboard. Without invitation from any one, Owen and Parker stepped upon this footboard, Owen taking a position on the west end thereof, and Parker mounting from it to a seat in the cab. On the same end of the engine, and above the footboard, was the tank, on the sloping part of which sat one Middlebrook, who was the foreman of the train crew. The engineer. occupied his seat on the east side of the cab, while the fireman was on the west side, dividing his time between shoveling coal and ringing the bell as the engine proceeded. On the footboard with the deceased were two negroes. With these parties occupying the different positions indicated, the engine backing, with the cars attached, proceeded a short distance south, when it turned east on Broadway to its place of destination.

Broadway, as its name indicates, is a wide avenue, devoted, however, exclusively to railroad use. On it are located six parallel tracks, the fourth from the north being the one on which the engine and cars in question were running. Davie avenue crosses Broadway from

north to south, at right angles, at a point about one mile east of where Owen and Parker boarded the engine. At the point of intersection there was a flagman.

Approaching this point from the west, the view of objects on Davie avenue, moving north to the crossing, was obstructed by a brick building located at the southwest corner of these two highways, and further, upon the occasion of this accident, by a number of cars which were standing on the track immediately south of the one on which this train was moving.

As the engine approached the crossing, a team of mules hitched to a wagon and driven by a negro came suddenly from the south, out of Davie avenue, upon the track. The uncontradicted evidence is that this driver, as he neared the track, was looking backward, but, turning his head and seeing the engine rapidly coming, he undertook to stop his team and back off. Failing in this, he released the lines and jumped from the wagon, thus saving himself. The mules, however, proceeding across the track, the engine came in violent collision with the wagon. In this collision Owen received the injuries from which his death resulted.

It is undisputed that the flagman was at his post, and as the train advanced he raised his flag to indicate to persons on Davie avenue that it would be dangerous then to attempt to cross; and, further, that, seeing the driver of this team getting dangerously near, the flagman made an ineffectual effort to stop him.

A number of witnesses were examined with regard to the speed at which this engine was running.

As is always the case where a question of this kind depends upon opinion evidence, the rate of speed was variously estimated to be from six to forty miles an hour. It may be assumed, however, that the jury credited the testimony which fixed the speed at the highest rate. The plaintiff below, also for the purpose of showing negligence on the part of the crew in charge of the train, over the objection of the defendants, offered in evidence an ordinance of the city of Memphis, within whose limits this accident occurred, limiting the speed of all trains and engines passing over any of the highways of the city to six miles an hour. There is no dispute but that the engineer, with perfect appliances for that purpose, did all that could be done to stop the train as soon as the mules appeared, and that it was impossible to control it, at the rate at which it was going, so as to avoid the collision.

The record also shows Owen was on the engine without invitation or necessity, and without the knowledge of the engineer or fireman. It is assumed the foreman, who sat on the tank, did see him, from the fact that this position enabled him to do so, and it may be this is fairly inferable from that fact.

The foreman's knoweldge, however, that the intestate occupied this position, and his failure to stop the train and order him from it, cannot lessen the responsibility

115 Tenn—8

of the intestate. As was said in *Railroad* v. *Bogle,* 101 Tenn., 40, 46 S. W., 760, the engine is at all times the most exposed and perilous portion of the train; and it was there held, even in the case of a passenger, who in a fancied emergency mounted the engine to prevent being left by the train, that he lost his right to the high degree of care the law accorded passengers riding in a coach, and could claim nothing more than protection from injury by the willful, wanton, or intentional act of the carrier and its employees. In *R. Co.* v. *Wilson,* 88 Tenn., 318, 12 S. W., 720, a baggage-master left his proper place on the train, and was riding with the engineer and fireman upon the engine when he was killed in a collision with another train, resulting from the negligence of an engineer in charge of an engine running from an opposite direction to that in which his train was moving. It was there held that, having abandoned his post of duty and sought a more exposed and dangerous position on the train, where he was killed, the railroad was not liable.

We do not deem it necessary to consider the various assignments of error upon the action of the lower court, as we are satisfied there is no theory upon which the verdict and judgment in this case should be maintained. The intestate was voluntarily occupying the most exposed position on the most dangerous part of the train at the time of the collision, and this, as has been seen, without invitation, and without any necessity whatever for his being there. That his presence at this place

Railroad v. Williford.

proximately contributed to his injury is beyond ques-
tion. No one on the engine save himself was injured,
unless it be one of the negroes riding with him on this
footboard. If he had been at any other place on that
train, so far as we can see, he would have avoided the
danger, and, as a matter of course, if he had not been
on the train at all, he would not have been affected by
this collision. Under these circumstances, we think,
as a matter of law, he was guilty of such gross contrib-
utory negligence as to preclude a recovery. While con-
tributory negligence, where the facts are fairly debat-
able, is a question which under proper instruction
should be determined by the jury, yet, where the facts
are incontrovertible, the question then becomes one for
the court. *Chattanooga Light & Power Co.* v. *Hodges,*
109 Tenn., 333, 70 S. W., 616, 60 L. R. A., 459, 97 Am.
St. Rep., 844.

In *Warden* v. *Louisville & Nashville R. Co.* (Ala.
1891), 10 South., 276, 14 L. R. A., 553, the plaintiff was
a front brakeman, and received the injury which he
complained of while sitting on the crossbeam in front
of an engine with his legs hanging over in front of the
pilot while the train was in motion. The record failed
to show that he had any duty to perform, or that any
duty could be performed by him while so riding, or that
it was in any sense necessary for him at that time to be
on the crossbeam.

In that case, after a full citation of authorities, and
an able discussion of the rule of law involved, the

court held the plaintiff's act in being at that place when the accident occurred "was negligence *in se* on his part, to be so declared as a matter of law." To this point the court said: "The investigations of the court and counsel have failed to disclose a single case to the contrary, while many courts are on record as holding, either by analogy or directly, that to ride upon the pilot or crossbeam in front of an engine while proceeding along its line of track, without justifying necessity therefor, involves *per se* such negligence as will defeat an action counting upon injuries received while so riding, and which would not have been received but for the plaintiff's being there. Even the assumption of less dangerous, but at the same time improper, positions on moving trains, voluntarily and unnecessarily has been many times held to be contributory negligence, as a matter of law, neutralizing the negligence of the defendant, and destroying an otherwise good cause of action, as illustrated in the following cases: *Martin* v. *B. & O. R. Co.* (C. C.), 41 Fed., 125; *Judkins* v. *Maine Central R. Co.,* 80 Me., 417, 14 Atl., 735, 6 New Eng. Rep., 715; *Hickey* v. *Boston & L. R. Co.,* 14 Allen, 429; *Penn. R. Co.* v. *Langdon,* 92 Pa., 21, 37 Am. Rep., 651; *Kentucky Central R. Co.* v. *Thomas' Adm'r,* 79 Ky., 160, 42 Am. Rep., 208; *Lehigh Valley R. Co.* v. *Greiner,* 113 Pa., 600, 6 Atl., 246; *Atlanta & C. R. Co.* v. *Ray,* 70 Ga., 674; *Martensen* v. *Chicago, R. I. & P. R. Co.,* 60 Iowa, 705, 15 N. W., 569."

In *Baltimore & P. R. Co.* v. *Jones,* 95 U. S., 439, 24 L.

Railroad v. Williford.

Ed., 506, the plaintiff, the employee of a railroad company, left the box car provided for his accommodation,
and while returning from his work rode on the pilot or
bumper of the engine, and was injured from a collision with some cars standing on the track in a tunnel.
On these facts, denying his right to recovery, the court
said: "His injury was due to his own recklessness and
folly. He was himself the author of his misfortune.
This is shown with as near an approach to a demonstration as anything short of mathematics will permit."
These cases involved claims arising out of injuries received when the parties so injured had voluntarily assumed positions dangerous in their nature while the
trains were in motion. The parties so injured were employes of the roads upon which the injuries occurred
but we can see no reason, and certainly none has been
suggested, why a mere intruder upon the train, in no
sense a passenger, and in no degree entitled to the care
that the carrier owes a passenger, should stand on any
higher plane, or be permitted to invoke any other principle for the maintenance of his action, than an employee injured or killed under like conditions. That
there is no distinction was the evident opinion of the
court in *Wilcox* v. *San Antonio & A. P. R. Co.* (Tex.
Civ. App.), 33 S. W., 379, where the right of one who
was not an employee to a recovery for an injury received while riding on the footboard of an engine was
considered. It was there held that a party riding on
the front footboard of a switch engine, even at the invi-

tation of the engineer in charge thereof, was guilty of such contributory negligence as to prevent his recovery for injuries received as the result of the running of the engine at a reckless rate of speed by the engineer.

But it is contended by the defendant in error that, though it be granted the intestate was without any right on the engine, and was guilty of contributory negligence in choosing the footboard, yet, it appearing the collision and his injuries might have been avoided by the exercise of ordinary and reasonable care on the part of the railroad employees, his representative is entitled to recover. It is said in argument the lack of such care is shown in the unusual rate of speed at which this train was moving (in violation of the city ordinance) in its approach to the much-used, and under existing conditions an extremely dangerous, crossing, and but for this lack the accident might have been avoided notwithstanding the negligence of Owen.

Let it be conceded that the collision might have been avoided if the speed had been within the limit prescribed by the ordinance, and running at the greater rate under these conditions was negligence on the part of the crew in charge of the engine, then we have a case where both parties by their negligence contributed to the injury which would bar this action. For, though theretofore recognized as sound doctrine, yet in the year 1809, for the first time, in *Butterfield* v. *Forrester*, 11 East, 60, decided by the Court of King's Bench, it was distinctly announced as a rule that the want of ordi-

nary care on his part, proximately contributing to an injury, would prevent the injured party from maintaining an action against another whose negligence also directly resulted in the injury. This rule has never since been doubted or denied, and that case has been cited with approval in every jurisdiction where the common law prevails. It rests upon the ground, first that it would be a violation of correct principle and sound policy to visit the consequences of the plaintiff's own recklessness upon the defendant where both are directly at fault, and, second, the impracticability in such a case of apportioning the effects of the concurrent negligence so the plaintiff will recover alone for that of the defendant.

However it may have been applied theretofore, at least in *Butterfield* v. *Forrester,* 11 East, 60, the doctrine was first formulated, and in a distinct form announced that the want of ordinary care on his own part proximately contributing to his injury will prevent the injured party from maintaining an action against another who also directly contributed to the injury. This doctrine announced in 1809 by the Court of King's Bench has never since been doubted or denied, and this case has been cited with approval and followed in every jurisdiction where the common law prevails. The wisdom of the rule has commended itself to both English and American courts which have had occasion to speak with regard to it.

In 1842, in the case of *Davies* v. *Mann,* 10 Mees. &

Wel., 546, what has been called a qualification of the rule in *Butterfield* v. *Forrester* was announced, and it is this qualification which, at the instance of the plaintiff's counsel, the trial judge gave to the jury. The rule in *Davies* v. *Mann* has been often applied where that case has not been mentioned as authority, and as often where the decision was rested entirely upon its authority. In the supreme court of the United States it is cited with approval in *Inland & Coasting Co.* v. *Tolson*, 139 U. S., 551, 11 Sup. Ct., 653, 35 L. Ed., 270, *Grand Trunk R. Co.* v. *Ives*, 144 U. S., 408, 12 Sup. Ct., 679, 36 L. Ed., 485, and other cases as well as in the decision of many of the state supreme courts and of the United States circuit courts in different circuits. It is to be observed, however, that the *Davies Case* did not attack the rule announced in *Butterfield* v. *Forrester*. To the contrary, it expressly conceded its soundness, but held that it had no application to the case before the court, on the ground that the plaintiff's want of ordinary care did not constitute, because of its remoteness, a bar to the action, while that of the defendant's did proximately operate to bring about the injury. In other words, the defendant's negligence was there held the sole proximate cause of the injury sustained by the plaintiff, in that it arose subsequently to that of the plaintiff, and, the plaintiff's negligence being so obvious that the defendant could by the exercise of ordinary care have discovered it in time to avoid inflicting the injury, his failure to discover and avoid it was

actionable. This was but the application of the doctrine, well settled, that, where the negligence of the defendant is proximate and that of the plaintiff remote, the action can then well be sustained, although the plaintiff is not altogether without fault. *Trow* v. *Vermont R. R. Co.,* 24 Vt., 487, 58 Am. Dec., 191. A reading of the opinion in the *Davies Case* makes it entirely clear that the facts raised the question of remote negligence on the part of the plaintiff and proximate negligence on that of the defendant, so plaintiff was given a recovery.

So far as we can discover, no court which has applied the rule there announced has gone further than the authority of the original case. It is true that there is to be found occasional obscurity of statement, so as to raise a doubt as to the limits within which the rule is to be confined, and it may be, and often is, that there is practical difficulty both for courts and juries in determining what is the remote, and what the proximate, cause of an injury; but where once settled that the plaintiff's negligence directly contributed thereto, we assume no well-considered case can be found which holds that the plaintiff can avoid the effect of his negligence and maintain his action against the defendant on the ground that the latter has not exercised reasonable care.

The counsel for the defendants in error in his argument relied with much confidence upon the opinion in *B. & O. R. Co.* v. *Hellenthal,* 88 Fed., 116, 31 C. C. A., 414,

in which there was applied the principle of *Davies* v. *Mann.* The case at bar, however, was evidently considered by the court as one of remote and proximate causes, and as such proper for its application. That it was not conceived by the court delivering this opinion that this rule would control where the contributory negligence of the plaintiff was a proximate cause of the injury, is apparent from the fact that the same court, speaking through Day, J., now of the supreme court of the United States, in the case of *Gilbert* v. *Erie Co.,* 97 Fed., 747, 38 C. C. A., 408, after referring to *Coasting Co.* v. *Tolson,* supra, *B. & O. R. Co.* v. *Hellenthal,* supra, and other cases, said, "We do not think the principle settled in these cases applies to the case where it clearly appears that the injury is the result of the concurrent negligence of the plaintiff and defendant."

The doctrine of the *Davies* v. *Mann* case has been applied in this State in a number of cases, notably in *Whirley* v. *Whiteman,* 1 Head, 610, though without reference to the decision itself. It is a sound and reasonable qualification of the general rule. For no party should be excused from the liability for an injury which he inflicts on another on the ground of the earlier negligence of the latter, when, aware of the latter's exposure to peril, he omits ordinary and reasonable care to avoid the injury. When the observance of this care would have prevented the hurt, failure in that regard is actionable wrong. It is so, not only because such negligence is the proximate occasion of the injury, but

Railroad v. Williford.

for the stronger reason that it indicates wantonness, and for this the law affords no excuse. As was said by the supreme court of Alabama in *Ga. Pac. R. Co.* v. *Lee,* 9 South., 233 : "Such failure with such knowledge of the situation, and the probable consequences of the omission to act upon the dictates of prudence and diligence to the end of neutralizing plaintiff's fault and averting disaster, notwithstanding his lack of care, is, strictly speaking, not negligence at all; but it is more than any degree of negligence, inattention, or inadvertence; it is that recklessness or wantonness or worse which implies willingness to inflict the impending injury, or willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetrate a wrong."

This intent, however, cannot be imputed to one who is without consciousness that his conduct will probably lead to wrong or injury. Nor can it be assumed, from the general fact that in some particular prior to, but in legal sequence one of the circumstances leading up to the injury, the party has been guilty of negligence, when it appears he was unconscious of the perilous position of him who is subsequently injured. Nothing short of actual knowledge of the situation, and an omission of preventive efforts after such knowledge, and where there is a reasonable prospect that such effort will avail, "can suffice to avoid the defense of contributory negligence on the part or imputable to the injured party." *Ga. Pac. R. Co.* v. *Lee,* supra.

The case at bar in no sense calls for the application of the rule of *Davies* v. *Mann.* The facts repel all suggestion of wantonness. Though absolutely unconscious of the extremely exposed position of the deceased, yet, when the emergency appeared involving a menace to the team, wagon, and driver, as well as to the train itself and those on it, the record shows the utmost energies of the engineer, with the best appliances at hand, were unavailingly exerted to avoid the collision.

Upon the facts proven and well-settled legal principle, we are constrained to hold that there was no evidence to support this action. It was a proper case for the trial judge to instruct the jury to return a verdict in favor of the defendants.

It results that the judgment is reversed, and the case 's remanded for a new trial.