## O'Toole v. Pennsylvania Railroad Company.

*Murphy & Levy*, for plaintiff; *Barnes, Biddle & Morris*, for defendant.

PER CURIAM, Feb. 21, 1929.—The McCahen Sugar Refining and Molasses Company is located at Delaware Avenue and Tasker Street, in the City of Philadelphia. The Pennsylvania Railroad Company maintains tracks which extend across what is known as Ash Street and into the refining company plant, the tracks being located immediately adjacent to the warehouse of the refining company. Cars for loading purposes are daily placed on said tracks and loaded cars are likewise removed therefrom. There is a platform for loading purposes located immediately off of Ash Street on the premises of the refining company at a height above the ground on a level with the floor of the box cars. At this point a short ladder extended from the ground to the loading platform, and when box cars were placed in the plant for loading it was impossible to use the ladder except when the open space between box cars was opposite the ladder.

On July 25, 1925, the plaintiff, an employee of the refining company, returned from his lunch and found a train of box cars standing on said track. The train was coupled to an engine and in charge of a full crew of railroad employees. The plaintiff's place of employment was beyond the blocked track. It was necessary for him to go by the train in some manner or to wait until the cars were removed from the track across Ash Street. There were three cars and the engine on the outside of the refining company and seven cars in the shed and on the premises of the refining company.

The testimony on the part of the plaintiff shows that there were forty or fifty men, employees of said refining company, congregated on Ash Street in front of said plant and at the railroad crossing awaiting an opportunity to return to their work after the noon-day lunch. The train's presence on the track on this particular day was not unusual. It was a regular everyday occurrence for more than two years previous to that day. The plaintiff and other employees knew that the defendant's train came in at the noon hour each day with empty cars and removed the loaded cars and placed the empty cars for loading. Plaintiff stood by for about ten minutes waiting for the train to move off of the premises and Ash Street, but, desiring to return to his work, decided to wait no longer and undertook to use the ladder at the loading platform. As he ascended the ladder the train moved, and as there

was no room for his body between the warehouse and the side of the box car, he was rolled and injured.

There was located within a few feet of the loading platform a door leading into Ash Street, through which employees entered to reach a bridge across the tracks into other parts of the refining company plant. It was testified to by the plaintiff and other witnesses in his behalf that at the time of the accident a man, sweeping and cleaning about the premises, was coming through the doorway on to Ash Street with a barrel partly filled with sweepings and rubbish, and that said cleaner and his barrel temporarily interfered with the free use of said door. The plaintiff had before him for his consideration three ways of reaching his place of employment. One absolutely safe way was through the door by removing the barrel of rubbish or stepping around it. Second, by waiting until the train moved, which was momentarily expected by him, and then using the ladder to the platform. And, third, by taking chances on the train not moving for a moment or two, using the ladder which was immediately in front of the open space between two box cars. He chose the last and only dangerous way and now complains that the defendant company was negligent in moving the train while he attempted to use the ladder.

The plaintiff was not engaged for the refining company in any work in and about the railroad train. He had no duty or work on the tracks or at the immediate place of the accident, and, as said by the Supreme Court, opinion by Mr. Justice Kephart, in Sweatman v. Pennsylvania R. R. Co., 264 Pa. 286, 289: "Had he taken the slightest precaution an ordinarily prudent man would take, he would not have been killed (injured)."

The plaintiff testified that he was familiar with the movement of the train that blocked his way and that he had seen the cars moved into place just a few minutes before the accident and that he knew, also, the train might start at any moment. Plaintiff's testimony (page 25) being as follows: "Q. You had seen the draft, I think you said, backing in a few minutes before? A. Backing in, yes. A. I didn't see the engine, but I saw the cars moving back in, and there must have been an engine on it." And on page 26: "Q. Now you knew, of course, the train might start any minute, didn't you? A. Yes." Plaintiff was familiar, also, with the steps leading into the platform and observed that a cleaner, gathering rubbish into a barrel, was moving the barrel through the doorway and that this doorway afforded a safe entrance to the building. And on page 29 he testified: "Q. You could have pushed your way by the barrel, couldn't you? A. I could have, yes. Q. Or you could have waited until the passageway was clear and the barrel was taken away? A. I couldn't very well wait because I had to be back to work. Q. You were in a hurry? A. No, I wasn't in a hurry, but I was told to be back there as soon as I could after dinner; as soon as possible." And on page 31: "Q. I understand that for several months these drafts of freight cars had been coming in at 12 o'clock and then leaving as soon as they were loaded, and usually between 12 and 1 o'clock. Is that right? A. Yes. Q. So that you knew the train might back out any time for that reason? A. They come in and go out when they want to."

The plaintiff was familiar with all of the conditions which confronted him. He had met the same situation daily for many months previous to the date of the accident. He was not a stranger to anything that occurred at that time. He had seen the train backed into the place where it stood and knew that at any moment it would move again, in which event the use of the ladder might in all probability result in fatal injury. And yet, with the great danger obvious to him, he assumed the dangerous way, although he knew that he could

proceed safely by the door in which the barrel was located by either passing around the barrel or removing the barrel from the doorway. There is no evidence that the barrel was too heavy to be removed. It contained sweepings and rubbish and was being handled by the man who did cleaning about the premises. It was known to the plaintiff and all other persons in and about the premises that the ladder which the plaintiff used could not possibly be used by any person while box cars were moving on the loading track. Yet plaintiff, knowing that the cars had just been moved and were about to move again, placed himself in this highly dangerous position. The men in charge of the train were not called upon to anticipate that persons would use the ladder in question under the circumstances that existed at the time of the accident, any more than they had a right to anticipate that some person might crawl under the train or over the train or through between two cars in order to reach the other side of the track. It is in evidence that forty or fifty men, returning to their work as plaintiff was returning, stood by, awaiting the moving of the train before proceeding to their place of work.

We, therefore, conclude that the plaintiff is clearly guilty of contributory negligence and not entitled to recover against the defendant company for the injuries sustained. This conclusion is supported by Bardis v. Phila. & Reading Ry. Co., 267 Pa. 352. In this case, the plaintiff was engaged by an industrial plant in removing coal from between two tracks and assumed a position of danger not necessary for him to take. The engine, shifting cars on the main tracks, struck the plaintiff and injured him. The court held that contributory negligence prevented him from recovering. Since the plaintiff was not using the track where he was injured, or working on it, no duty to give warning was owed him. Trainmen need not be observant where they are not required to anticipate the presence of workmen or others on the tracks, nor are they required to anticipate the negligence of the plaintiff.

And in Cubitt v. N. Y. C. R. R. Co., 278 Pa. 366, the defendant railroad had built a siding connecting its main track with the Atlantic Refining Company's power house. Cubitt was killed while standing on a track where his work did not require him to be. The court held that he was guilty of contributory negligence and could not recover: "Even in such a case, if the employee had taken a position not required in the performance of his duties and injury results, no recovery can be had. The fact that the defendant was negligent in not giving a signal or in running its engine backwards did not relieve the deceased from using proper care." Other cases supporting this conclusion are: Hardy v. Lehigh Valley R. R. Co., 240 Pa. 454; Cunningham v. Phila. & Reading Ry. Co., 249 Pa. 134; Gentile v. Phila. & Reading Ry. Co., 274 Pa. 335; Haven v. Bridge Co., 151 Pa. 620; Lehigh Valley R. R. Co. v. Greiner, 113 Pa. 600; Neal v. B. R. & P. R. R. Co., 289 Pa. 313.

In the last case, the Supreme Court said (289 Pa. 318) : "Neal, a railroad man of six years' experience, thoroughly familiar with the situation, knowing that a coupling was being made with the sand car . . . stepped between the cars and was instantly caught. He could have waited a moment . . . or could have walked around by Philadelphia Street. He did none of these things, but rashly stepped between the cars at a time of danger and thereby assumed the risk."

And on page 319 it said: "It is the duty of one working around railroad tracks to look out for his own safety (Sweatman v. Pennsylvania R. R. Co., 264 Pa. 286), and no recovery can be had for an injury sustained while voluntarily taking a chance or testing a danger."

In the case of Baltimore & Ohio R. R. Co. v. Newell, 196 Fed. Repr. 866, it is held: "Clearly the railroad company was not obliged, in considering the

140

dimensions of that space, to provide for the safety of one who voluntarily placed himself therein. . . . This platform was not a concealed object or one difficult of observation, and the plaintiff unquestionably was familiar with its existence and location during the whole period of his service (six years). Not only was the space between the car and the platform obviously not a place in which the plaintiff or any other employee was required to work . . . but there is no evidence that at any other time such work was required to be done in that space."

The ladder in the present case was a safe means of reaching the loading platform when cars were not in motion or about to be moved, but it was known to all persons familiar with the location thereof and the movement of trains to be unsafe and highly dangerous when a train was about to move.

Counsel for the plaintiff earnestly, and with considerable force, contends that the case of Diehl *v.* Lehigh Valley R. R. Co., 254 Pa. 404, rules the present case. The facts there, however, are different. The plaintiff's husband was a freight conductor in the employ of a steel company, and it was his duty to work in the railroad yard where he was run down and killed. And it appeared (page 254): "While there is evidence that deceased might have avoided stepping between the cars by passing around the scales to the opposite side of the track, the method he adopted was not unusual, nor so obviously dangerous, as to convict him of negligence as matter of law. The car on the scales was detached from the train. The engineer was not expected to move the remaining ones until signal to do so, and no other train was permitted to use the track when occupied for weighing purposes." In the present case, the danger was obvious and the plaintiff expected the train to move out any moment.

Therefore, under all the evidence and the law, the motion for judgment *non obstante veredicto* is sustained and judgment directed in favor of the defendant.