## TROY WELLS, Admr., v. SOUTHERN RAILWAY CO.

Eastern Section. January 9, 1926.

Certiorari denied by Supreme Court, April 5, 1926.

1. **Negligence. Contributory negligence. Statutory Precautions do not apply to a switching operation.**
   In an action for damages for death of plaintiff's intestate killed by a switch engine while switching in defendant's yards, held the statutory precautions do not apply and contributory negligence would defeat the action except in excepted cases herein considered.

2. **Negligence. The last clear chance doctrine defined.**
   In an action for damages for death of plaintiff's intestate killed by a switch engine while switching in defendant's yards, held the rule of the doctrine of "the last clear chance" is that contributory negligence of the plaintiff will not bar a recovery where the defendant could have avoided the accident thereafter, where the acts of negligence were successive acts of the parties but the negligence of the defendant must be conscious misconduct after knowledge of the plaintiff's peril, and the defendant's failure to exercise due care to discover plaintiff's peril is not chargeable against the defendant so as to invoke the rule of "the last clear chance." Where the misconduct or negligence of the plaintiff is simultaneous with that of the defendant, or the act of defendant has not terminated as a casual factor, there can be no recovery under the doctrine of "the last clear chance."

3. **Negligence. Last clear chance doctrine. Exceptions to the rule.**
   Where defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities, the law imposes the duty on defendant to keep a continuous lookout and the defense of contributory negligence is not available where the defendant was guilty of a negligent act or omission subsequently to the time when he ought to have known that the negligence of the plaintiff or of the person injured had created a situation of peril.

4. **Negligence. Last clear chance doctrine. Exceptions to the exception to the rule.**
   In an action for damages for death caused by defendant's switch engine, held that a person cannot act so recklessly as to utterly disregard his own safety and still hold that the exception to the "last clear chance" doctrine binds the defendant and makes it liable for damages where its agent did not see deceased position of peril.

5. **Negligence. "Last clear chance" doctrine. Exception to the rule is a part of the law in Tennessee.**
   In an action to recover damages for wrongful death the rule that the defendant is liable under the "last clear chance" doctrine if he is operating a dangerous instrumentality and should have seen deceased position of peril is a part of the law of Tennessee.

6. **Negligence.** Where deceased negligence is so gross that it amounts to wilful negligence the defendant is not liable for wrongful death under the "last clear chance" doctrine.

Where an aged man who was hard of hearing was walking in a railroad switch yard and knew that engines were passing and repassing and he stepped from a place of comparative safety at the edge of the ties into the center of the track without looking behind him for a train, held guilty of such wanton and wilful negligence as to bar recovery under the "last clear chance" doctrine.

Error to Bristol Law Court, Sullivan County; Hon. D. A. Vines, Judge.

Affirmed.

St. John and Gore, of Bristol, for plaintiff in error.

Burrow and Burrow and H. T. Campbell, all of Bristol, for defendant in error.

PORTRUM, J.   The Circuit Judge directed a verdict in favor of the defendant, and the plaintiff has appealed and insists that the facts of this case bring it within the rule of the exceptional case and make applicable the doctrine of the "last clear chance," as announced in the case of Todd v. Railroad, 135 Tenn., 105.

On March 26, 1924, the plaintiff's intestate, his father, Leonara Wells, was run over and killed by a backing switch-engine of the defendant company, in the city of Bristol, and within the yards of the company. The deceased, a portly man seventy-five years of age, with defective hearing, was walking into Bristol on the main tracks of the company, and near the plant of the Stone Lumber Company. At a point one hundred feet north of the railway switch and about two hundred feet south of the Ashe Street crossing, Wells met Allenbury, section-foreman of the company, and Allenbury warned Wells of the danger of an old man walking with a stick, in walking the tracks, and as a result Wells got off the main line over on the side track, where he was later killed. At this time an engine engaged in switching, or the coupling up of a train, was coming out of Bristol on the main line and was at a point just north of the Ashe Street crossing. When the engine blew for the crossing, Wells stepped off of the main line on to the switch or side track and continued his course towards Bristol. The engine ran by Wells, who was facing it, and continued beyond him about one hundred or two hundred feet, stopped and switched over to the side track upon which he was walking and backed up behind Wells and ran him down and killed him.

The track from the switch to the Ashe Street crossing was practically straight and Wells was an obstruction that could have been readily seen by a person on the lookout upon the engine, after the engine switched to the side, for Wells was walking on the ends of the ties or outer edge of the track. The engine was running

at a speed of from eight to ten miles an hour and there is proof that at the time it struck him it was picking up speed, but its maximum speed is not shown to have been over ten miles an hour. The accident happended about eight o'clock in the morning. There were several eyewitnesses to the accident, who were laborers of the lumber company and witnesses of the plaintiff. The engine was equipped with an automatic bell-ringer, and the bell was being rung continuously. No one was on the lookout ahead, we must conclude this for the reason the evidence is in conflict and every intendment must be resolved in favor of the plaintiff in testing the right of the trial judge to direct a verdict.

When the engine was switching over on the side track and was bearing down upon the deceased, at the rate of eight to ten miles an hour, and while the deceased and the engine were in plain view of the witnesses and about the length of two rails' distance therefrom, and while the engine was seventy to seventy-five feet from the deceased, one of witnesses says that he turned his head in order not to see the accident, which he anticipated, but just as he turned he saw the deceased step from the ends of the cross ties, which was a place of less hazardous position, into the center of the track, without looking backward and towards the approaching engine, and that when he looked back again he saw the stick of the deceased flying into the air and the deceased falling forward. A leg was severed, the deceased suffered a concussion of the brain and died within a few minutes after the witnesses had rushed to him.

The engine blew for the Ashe Street crossing as it went down and as it came back, and its near proximity should have acquainted the deceased with the shifting operations, if his hearing faculty was so defective as to render him unable to hear, but he had been warned of his dangerous situation by the section-foreman and had stepped from the main track to permit an engine and tender to pass him, and knew the engine was engaged in switching operations.

The yards of the company were used as a walkway by the people living in the immediate vicinity in going to and from the city of Bristol, and the company had knowledge of this use and was charged with the duty to look out and guard against injury to persons using the frequented way. There were three tracks in use, but between the tracks was a walkway of comparative safety, the deceased elected not to use the walkway between the tracks from which he might have found a way of escape, but chose to use, first, the more dangerous way by walking on the ends of the ties on the outside of the rails, and later electing to use the most hazardous, at a time when it afforded no means of escape, by stepping into the center of the track without looking back, and when the engine was bearing down upon him, seventy feet away, at the rate of ten miles an hour. Had he, at the time he stepped to the center of the track, used the ordinary

instinct of self-preservation he would have seen the approaching engine and would have had time to make his escape. He stepped over in the center of the track and passed from view of the lookout ahead and assumed a most hazardous position at a time when it was practically impossible to prevent the accident, had the employees of the company known of his hazard and used every effort to prevent the accident. Had the lookout ahead seen the deceased walking on the ends of the ties, as is insisted it was his duty to see, and, in law, is held to have seen, still the lookout would have had the right to assume that the deceased was exercising the prudence of the ordinary man by using his faculties of hearing and seeing, and therefore was aware of the approaching engine and would step off the track to a place of safety, which was then available to him, and this assumption, while not relieving the company to use every precaution to prevent the accident, would acquit the employees of any element of wantonness or maliciousness in their conduct, and especially under these circumstances, is the element of wantonness or maliciousness absent, since the employees of the company were not aware of the presence of the deceased, and this element is essential before the plaintiff can invoke the doctrine of "the last clear chance" when the presence of the deceased is unknown to the defendant.

The statutory precautions do not apply to a switching operation, as is admitted, and the suit is grounded upon a common-law court of negligence, and while under the statute contributory negligence goes in mitigation of damages, under the common-law contributory negligence defeats the action except in those excepted cases to be herein considered. Railroad v. Hugh, 95 Tenn., 419; Todd v. Railroad, supra.

The rule of the doctrine of "the last clear chance" is that contributory negligence of the plaintiff will not bar a recovery where the defendant could have avoided the accident thereafter, where the acts of negligence were successive acts of the parties, but the negligence of the defendant must be conscious misconduct after knowledge of the plaintiff's peril, and the defendant's failure to exercise due care to discover plaintiff's peril is not chargeable against the defendant so as to invoke the rule of "the last clear chance." Where the misconduct or negligence of the plaintiff is simultaneous with that of defendant, or the act of defendant has not terminated as a casual factor, there can be no recovery under the doctrine of "the last clear chance." This is a statement of the general rule, as announced in Todd v. Railroad, supra, but there are certain exceptional cases which do not excuse the failure to exercise due care to discover plaintiff's peril, and it is insisted that the instant case falls in this classification. The exception to the rule is defined as follows:

"Society is not always unconcerned as to whether the conduct of its members shall reach the standard of due care erected by the law; and that standard may tend to be attained by the assistance to be given or refused by society's judicial functionaries.

"It is on such considerations that cases composing an exceptional class have been determined. We refer to those instances where the defendant is engaged in a business hazardous to the public in certain aspects, such as that of operating dangerous instrumentalities, and where, therefore, the law imposes the duty on the defendant continuously to anticipate that some other (plaintiff) may negligently subject himself to a peril from defendant as a source; the latter having control of some instrumentality that has inherent potentiality of danger. Such a defendant is precedently, and continuously to the moment of injury, under the duty of lookout for the other, and his or its negligence in failing to discover the exposure of such a plaintiff and averting injury by the exercise of ordinary care is on grounds of policy considered to be proximate cause. The law in such case conceives of the negligence of the plaintiff as being remote; it may be in disregard of logic or of actual causation. It is assigned that status in the law's regard by reason of the policy of the law, though it may be that from the standpoint of actuality of cause the plaintiff's negligence is concurrent with the defendant's to the moment of injury. Teakle v. San Pedro, etc., R. Co., 32 Utah, 276, 90 Pac., 402, 10 L. R. A. (N. S.), 486; opinion of Ladd, J., in Bourrett v. Chicago, etc. R. Co., 152 Iowa, 579, 132 N. W., 973, 36 L. R. A. (N. S.), 964; Patterson's Railroad Accident Law, 55.

"Mr. Thompson, in his work on Negligence (1 Thomp. Neg. (2 Ed.), section 232), referring to the doctrine of the above-cited leading English cases, says in this connection:

"The doctrine can have no just application in any case, except where the person inflicting the injury was under the duty of exercising care to discover the exposed situation of the person receiving the injury. If this test is kept steadily in view, it will lead us out of many difficulties and prevent much confusion. The best illustration of the principle is found in the case of the engineer of a railway train on a railroad where there are grade crossings, or where the tracks run along a public street or highway, and where consequently human beings or animals are liable to get on the track. The engineer is driving the instrument of danger forward, generally at a high rate of speed. He is the actor, and the person or animal on the track is passive; he is therefore under a continuous duty of watch-

fulness . . . The sound principle then is that the defense of contributory negligence is not available where the defendant was guilty of a negligent act or omission subsequently to the time when he ought to have known that the negligence of the plaintiff or of the person injured had created a situation of peril.'' Todd v. Railroad, supra.

We have stated the doctrine of ''the last clear chance'' and its exception, but attention is now directed to an exception to the exception of the rule. The exception to the exception is stated by Judge Williams on page 108 of the Todd case, (135 Tenn.), as follows:

''However, notwithstanding what has just been said and the further fact that the plaintiff in the case under review at the time he was struck was in a highway, where the train employees must have anticipated persons might be, the principle is not decisive of the case in favor of the plaintiff. He was guilty of gross negligence; he knew that he could not cross over and continue his journey as a traveler on the highway; he stood in a dangerous place with his back turned towards a source of danger for an unreasonable time and disregarded the increase of dangers about him. The above principle is itself subject to a modification likewise grafted by the law for reasons of public policy. A defendant who is grossly negligent and reckless to the point of acting in disregard of the rights of others or of imputed willfulness cannot avail himself of a plea of plaintiff's contributory negligence; nor may a plaintiff who is acting so recklessly as to be in utter disregard of his own safety be heard to invoke the application of the principle above discussed. The law will refuse to impose on the defendant in his behalf any other than the doctrine of actually discovered peril. His negligence is considered to be proximate in the chain of causation.

''A number of cases reach this result, whether based on this reasoning or not. A few of these will be outlined.''

The cases cited and outlined by Judge Williams, as above indicated, will not be quoted from at length, the first being Quinn v. Chicago, etc., R. Co., 162 Ind., 442, in which it is said:

''Railroad crossings on streets and highways have always been recognized as places of extraordinary danger, and, when passing over the intersecting tracks, all persons competent to exercise care for their own protection and safety are required by the law to use their faculties of sight and hearing, when such use is possible, and to act upon the presumption that engines or trains may be expected to pass in either direction at any moment. It is also a matter of common knowledge that trains are often moved backward along the track, and that when running slowly they make but little noise.''

If this be true of a person using a crossing in which he has a mutual right of occupancy, it certainly is true of a person going upon the yards of a railway company which is more hazardous.

In the case cited of Dunsworth v. Grand Trunk Ry. Co., 127 Fed., 307, it is stated to be the plaintiff's duty to bring the case within the modification of the rule and it is incumbent upon him to make a showing calling for its application.

We believe the exception to the general rule of "the last clear chance," as defined by Judge Williams in the Todd case, is in force as part of the law in this State, notwithstanding that it was not invoked in the Todd case because the plaintiff's negligence was so gross and reckless as not to entitle him to its benefit; and it has not been invoked in a subsequent case, still it has been cited and the facts of early cases used as illustrations of the application of the rule; for instance, in the case of Railroad v. Parks, 136 Tenn., 371, Judge Williams says:

"The decision in Railroad v. Dies, 98 Tenn., 655, 41 S. W., 860, is sometimes relied upon as being in conflict; but that case is to be construed as demonstrating that the use of both faculties of sight and hearing, in the circumstances of that case, was useless—rendered unavailing; and when so construed that case is in harmony with many decisions in other jurisdictions. In the Patton case, also, the plaintiff was excused of proximate, barring contributory, negligence, because as to sight he was misled by the first section of the broken freight train which he might have taken to be the entire train, and therefore was excused in respect of looking behind for the second section; and, as to hearing, that was prevented by the noise of a waterfall beneath the bridge on which the pedestrain, a stranger to the situation, was then struck, or about to be struck, he having gone on the track near that point. That the duty is not absolute, so as to be observed by the traveler in all cases, exceptional as well as ordinary, is the pronouncement of these cases."

After reviewing other cases, Judge Williams stated:

"It therefore appears that in all of the above cases there was room for a fair inference that the traveler did not have opportunity for the use of either sense, and in each a case for the jury was presented."

It is therefore the duty of the plaintiff, before he is entitled to have his case submitted to the jury, to show facts raising a fair inference that he was incapable of exercising either the sense of hearing or seeing, and in the absence of the ability to use one sense, it then became, as a matter of law, his duty to exercise the other sense more diligently. Todd v. Railroad, supra.

. But the defendant in the instant case argues that the Supreme Court has uprooted this exception by its opinion in the case of Bejach v. Colby, 141 Tenn., 686, where it is said;

"We do not think that it was intended by the language used to lay down the rule that negligence on the part of the plaintiff, if gross, would bar his right to recovery, though it did not directly produce the injury or contribute to it. If such is the meaning of the language used by the learned judge who wrote the opinion in that case, it does not state the correct rule, because, in all cases, before the plaintiff's negligence can be held to bar recovery it must appear that such negligence directly contributed to bring about the injury."

This statement, generally speaking, is sound, and the court had reference to the language used by Judge Neil in the case of Chattanooga Station Co. v. Harper, 138 Tenn., 562, when he used a quotation, containing the reference to gross negligence of the plaintiff, from the Todd case. The quotation used by Judge Neil was not apropos, for the Harper case did not fall within the exception to the exception, nor for that matter within the exception, for the reason, as stated in the opinion, the company did not know its yards were being used by the public, and before the exception to the general rule can be invoked, this knowledge is an essential element.

The learned judge writing the opinion in the Bejach case did not have in mind the exception to the exception, as defined by Judge Williams, who stated as a matter of public policy, without reference to the approximate cause, persons engaged in hazardous businesses, such as railroads, when they had knowledge of their tracks being used by the public as passageways, were liable for the injury of travelers unless the negligence of the traveler was gross and amounted to an utter disregard of self-protection. If he intended to eliminate the degree of negligence as above indicated, then the exception, applicable to hazardous businesses, would apply no matter how wanton the conduct of the plaintiff. We do not think this was so intended. And if the case is brought within the exception, then if the plaintiff's negligence is gross he still may not recover.

The history of the doctrine of "the last clear chance" is somewhat obscure in our earlier cases and was known as the doctrine of comparative negligence and not favored.

In the case of Railway v. Fain, 80 Tenn., 39, decided in 1883, an excerpt of the judge's charge in the lower court is set out in the opinion, and this excerpt defines the doctrine of grosser negligence on the part of the defendant; and while the case is not reversed, the doctrine is not approved, the court stating that other portions of the charge clearly define the true rule. This case was referred to in Railroad v. Gurley, 80 Tenn., 54, decided by the same judge, and the doctrine of comparative negligence is not approved, but in two

later cases, Railway v. Hull, 88 Tenn., 37; and Railway v. Adkin, 89 Tenn., 248, the case of Railroad v. Fane, supra,—that is, that portion of the opinion stating the rule of grosser or comparative negligence is expressly repudiated. And in the case of Fleming v. Railway, 106 Tenn., 374, is a case in which the doctrine of "the last clear chance" might have been invoked and have constituted a precedent but for the fact that the opinion states the trial judge charged upon contributory negligence and the caution required of the plaintiff to look and listen. In other words, the court did not relieve the plaintiff of the duty of looking and listening.

In the case of Knoxville Traction Co. v. Brown, 115 Tenn., 323, the facts show the plaintiff acted in an emergency by attempting to cross a street and the double tracks of the traction company, and on reaching the first track he was intercepted by a wagon, and passing behind it and while about to enter upon the second track he was struck by a car. The court held, under these facts, it was the plaintiff's duty to look both ways before entering upon the first track and also before entering upon the second track, after being intercepted by the wagon, and his failure to do so, if the direct and proximate cause of the injury, would preclude his recovery, and when the plaintiff's negligence concurred directly and proximately with the defendant's negligence, causing the injury, there could be no recovery. And the facts being undisputed, the case was one for the court where there was no difference of opinion or fair inference arising excusing the plaintiff from looking and listening. The court said:

"Under such circumstances, it was incumbent on her to use such care, caution and diligence as would be necessary and reasonable, to prevent an accident; and the care and caution which she would use upon an ordinary occasion in crossing would not meet the requirements of the perilous condition in which she voluntarily placed herself."

"This rule is entirely consistent with that other, under which a party will not be excused from liability for an injury which he inflicts on another on the ground of the earlier negligence of the latter, when, aware of the latter's exposure to peril, he omits ordinary and reasonable care to avoid the injury. When the observance of this care would have prevented the hurt, failure in that regard is actionable wrong. It is so, not only because such negligence is the proximate occasion to the injury, but for the stronger reason that it indicates wantonness, and for this the law affords no excuse.' Railroad v. Williford, supra, (115 Tenn., 122, 88 S. W., 178); Whirley v. Whiteman, supra, (1 Head, 619). In the first one of the cases last cited this court quoted with approval from an opinion of the Supreme

Court of Alabama, in Ga. Pacific R. Co. v. Lee, 9 South., 233, 92 Ala., 270, as to the failure of a defendant to make an effort to avoid an injury which he sees is imminent to the party who has been guilty of some negligence in placing himself in a perilous position, as follows: 'Such failure, with such knowledge of the situation and the probable consequences, and omission to act upon the dictates of prudence and diligence to the end of neutralizing plaintiff's fault and avoiding disaster, notwithstanding his lack of care, is, strictly speaking, not negligence at all; but it is more than any degree of negligence, inattention, or inadvertence. It is that recklessness or wantonness, or worse, which implies willingness to inflict the impending injury, or willfulness in pursuing a course of conduct which will naturally or probably result in disaster, or an intent to perpetuate a wrong.'

" 'Judge Cooley, in the work already referred to, at page 674, on this point says; 'Where the conduct of the defendant is wanton and willful, or where it indicates that degree of indifference to the rights of others which may justly be characterized as recklessness, the doctrine of contributory negligence has no place whatever, and the defendant is responsible for the injury he inflicts, irrespective of the fault which placed the plaintiff in the way of injury. The fact that one has put himself in a place of danger is never an excuse for another's purposely or recklessly injuring him. Even the criminal is not out of the protection of the law, and is not to be struck down with impunity by persons. If, therefore, the defendant discovered the negligence of the plaintiff in time by the use of ordinary care to prevent the injury, and did not make use of such care for the purpose, he is justly chargeable with reckless injury, and cannot rely upon the negligence of the plaintiff as a protestation.' "

"See Westborne Coal Co. v. Willoughby, 133 Tenn., 257, 180 S. W., 322; Todd v. Railroad, 135 Tenn., 92, 185 S. W., 62 L. R. A., 1916E, 555; Railroad v. Williford, 115 Tenn., 122, 88 S W., 178."

The case of Johnson v. Warwick, 148 Tenn., 209, cites the Todd case, upon the doctrine of "the last clear chance," and holds that the doctrine is not applicable where the plaintiff's negligence was concurring and continuous up until the time of the accident; but the exception to the rule was not applicable in this case, for the reason that the accident was between automobile owners and neither was operating an inherently dangerous instrumentality within the meaning of the rule, or, if so, both were operating such an instrumentality, and their rights were neutralized.

The plaintiff insists that the doctrine of "the last clear chance" is in force in Tennessee, and under the rule laid down in the excepted case he was relieved from looking and listening, being upon tracks frequently used as a walkway, because the engine approached him from such distance, with a clear filed, that the law would impute to the company knowledge of his presence, and the company's act in injuring him with knowledge of his presence was so wanton as to relieve him of the duty to look and listen. It is true the company had ample opportunity to know of his presence on the track, and it is guilty of negligence in not keeping a lookout ahead. It therefore becomes a question of whether or not the deceased's negligence in failing to look and listen was so gross as to amount to willful negligence precluding him from a recovery under the rule as stated by Mr. Justice Williams in the Todd case.

The deceased had knowledge of the shifting engine which rendered his position on the yards perilous and hazardous. He did not elect to use the walkway between the tracks, which was less perilous, but used the ends of the ties as a way, but one from which he might have found escape, until the engine was within seventy feet of him, when he wantonly and in disregard of every instinct of self-preservation deliberately stepped to the middle of the track at a time when it was not practicable for the company to prevent the accident in his then position. The deceased possessed the faculty of seeing and his view was unobscured, the case presents a state of facts from which no fair inference can arise excusing him from looking; and his failure to look was the direct and proximate cause of his death. The trial judge could do nothing less than direct the verdict in favor of the defendant under such circumstances.

As for the inference to be drawn from the failure of the defendant to introduce the brakeman, none is justifiable, plaintiff's proof shows the fireman threw the switch, and the only reference to the brakeman was that he was standing at the fire box.

The trial judge also sustained the defendant's motion for a directed verdict upon its plea of accord and satisfaction. The defendant has seen fit to argue that the amount paid in satisfaction, though insignificant, was adequate, for the reason that the plaintiff had no cause of action. We are content to sustain defendant's insistence in this respect as sound and without further elaboration. The assignments of error in this court are overruled and the case is affirmed at the cost of the plaintiff in error.

Snodgrass and Thompson, JJ., concur.