# IN THE COURT OF APPEALS OF TENNESSEE
## AT KNOXVILLE
September 20, 2023 Session

## PENNY LAWSON, ET AL. v. HAWKINS COUNTY, TN, ET AL.

**Appeal from the Circuit Court for Hawkins County**
**No. 20-CV-37      Alex E. Pearson, Judge**

_____

### No. E2020-01529-COA-R3-CV

_____

This appeal concerns governmental immunity. Steven W. Lawson ("Decedent"), by and through his widow, Penny Lawson, and on behalf of Corey Lawson, Decedent's child ("Plaintiffs," collectively), sued the Hawkins County Emergency Communications District Board ("ECD-911"), Hawkins County, Tennessee, and Hawkins County Emergency Management Agency ("the EMA") ("Defendants," collectively) in the Circuit Court for Hawkins County ("the Trial Court") alleging negligence, gross negligence, and recklessness in Defendants' response to a road washout that led to Decedent's death. Defendants filed motions for judgment on the pleadings, which the Trial Court granted partly on grounds that claims of recklessness could not proceed against the Defendant entities under the Governmental Tort Liability Act ("the GTLA"). Plaintiffs appealed. We reversed. The Tennessee Supreme Court reversed this Court, holding that when the GTLA removes immunity for negligence, it does so for ordinary negligence only. The matter was remanded to this Court for further proceedings. We hold, *inter alia*, that while Defendants' immunity is removed under the GTLA by Plaintiffs' ordinary negligence claims, the public duty doctrine bars those claims. However, ECD-911's immunity also is removed by Plaintiffs' claim of gross negligence under Tenn. Code Ann. § 29-20-108, and the third special duty exception to the public duty doctrine allows that claim to proceed against ECD-911. We reverse the Trial Court's grant of judgment on the pleadings to ECD-911 and remand for Plaintiffs' case to proceed against that entity. Otherwise, we affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed, in Part, and Reversed, in Part; Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

Thomas J. Seeley, III, Johnson City, Tennessee, for the appellants, Penny Lawson and Corey Lawson.

Jeffrey M. Ward, Greeneville, Tennessee, for the appellees, Hawkins County, Tennessee and Hawkins County Emergency Management Agency.

Russell W. Adkins, Kingsport, Tennessee, for the appellee, Hawkins County Emergency Communications District Board.

## OPINION

### Background

The Tennessee Supreme Court set out the pertinent factual and procedural background of this matter as follows:

**A.**

In the early morning hours of February 22, 2019, a mudslide washed away part of Highway 70 on Clinch Mountain in Hawkins County, Tennessee. A driver traveling north on Highway 70 called the Hawkins County Emergency Communications District ("ECD-911") at 12:58 a.m. to report that trees were blocking the road. The driver warned the 911 dispatcher that the highway was "cut off" and that a driver "going up the mountain" would "go off the road."

A Hawkins County deputy was dispatched to the scene about five minutes later and arrived before 1:13 a.m. Once at the scene, the deputy called ECD-911 and advised contacting the highway department to report a "big mudslide" and a leaning power pole. Although the dispatcher expressed concern that "one of these days . . . the whole mountain is just gon' come down," neither the dispatcher nor the deputy discussed closing the road. Instead, the dispatcher jokingly warned the deputy not to "let a rock fall on" him.

From around 1:21 a.m. to 1:30 a.m., the dispatcher placed calls to the Tennessee Department of Transportation, the director of the Hawkins County Emergency Management Agency ("EMA"), and Holston Electric Company.

Fifteen minutes later, at about 1:46 a.m., the deputy called ECD-911 again. This time, he reported that a car had hit a "rock embankment" and

-2-

flipped down the mountain. The driver of that car was Steven Lawson. He was trapped inside the vehicle for eleven hours and died before help arrived.

Shortly after 1:46 a.m., the deputy told the dispatcher that a second vehicle had also rolled down the mountain. At that time, the deputy advised ECD-911 that he would ask neighboring Hancock County to "block the road off." The EMA director, whom the dispatcher had called earlier that morning, did not arrive at the scene until 3:07 a.m.

**B.**

Mr. Lawson's surviving spouse, Penny Lawson, on her own behalf and on behalf of Mr. Lawson's surviving child, Corey Lawson, brought this wrongful-death action against Hawkins County, ECD-911, and EMA in Hawkins County Circuit Court. She alleged that "grossly negligent and reckless conduct" by these parties and their employees caused Mr. Lawson's death. All three defendants moved for judgment on the pleadings. ECD-911 argued that the Tennessee Governmental Tort Liability Act, Tenn. Code Ann. § 29-20-201 (2012 & Supp. 2013) ("the Act" or "GTLA"), provided immunity from suit for claims based on recklessness. Hawkins County and EMA similarly argued that they were immune under the Act from claims based on non-negligent conduct. And all three defendants invoked the public-duty doctrine as an additional basis for immunity.

The trial court granted the motions and dismissed the case with prejudice. The court concluded that the Act gave defendants immunity from claims alleging recklessness and that the public-duty doctrine independently barred any claims based on negligence.

The Court of Appeals reversed. *See Lawson v. Hawkins Cnty.*, No. E2020-01529-COA-R3-CV, 2021 WL 2949511 (Tenn. Ct. App. July 14, 2021), *perm. app. granted* (Tenn. Nov. 17, 2021). First, it held that the Act did not provide immunity for claims based on gross negligence or recklessness. The court reasoned that "negligence is a subspecies of" gross negligence and recklessness, and immunity from claims based on those "heightened forms of negligence" is therefore removed by Tennessee Code Annotated section 29-20-205, *id.* at *10, which lifts immunity for "injury proximately caused by a negligent act or omission of any employee within the scope of his employment," *id.* at *5 (quoting Tenn. Code Ann. § 29-20-205). Next, the court concluded that plaintiff's complaint alleged sufficient facts to state claims for recklessness and gross negligence. *Id.* at *11. Finally, it held that the public-duty doctrine did not bar plaintiff's suit

-3-

because her allegations of "recklessness and gross negligence" were sufficient at the judgment-on-the-pleadings stage to trigger an exception to the doctrine for claims involving reckless misconduct. *Id*. at *12.

We granted defendants' application for permission to appeal. That application raised three issues. The first issue—and the only one we decide in this opinion—is whether the Court of Appeals erred by holding that Tennessee Code Annotated section 29-20-205 allows a plaintiff to sue a governmental entity for employee conduct that exceeds mere negligence.

*Lawson v. Hawkins Cnty.*, 661 S.W.3d 54, 57-58 (Tenn. 2023) (footnotes omitted).

The Tennessee Supreme Court reversed this Court, holding that when the GTLA removes immunity for negligence, it does so for ordinary negligence only. *Id*. at 57. The case was remanded to this Court for further proceedings. *Id*. In accordance with the Tennessee Supreme Court's Opinion, we decide the remaining issues.

## **Discussion**

We discern from our Supreme Court's Opinion four issues to be addressed on remand: 1) whether Plaintiffs sufficiently preserved and presented arguments (a) that they sufficiently alleged ordinary negligence in addition to gross negligence and recklessness and (b) whether Tenn. Code Ann. §§ 7-86-320 and 29-20-108 remove immunity for certain claims against ECD-911; 2) if those arguments were sufficiently preserved and presented, whether Plaintiffs' complaint sufficiently alleged ordinary negligence; 3) whether Tenn. Code Ann. §§ 7-86-320 and 29-20-108 remove immunity for certain claims against ECD-911; and 4) whether the public duty doctrine independently bars any of Plaintiffs' claims that may proceed under applicable statutory law.[1]

This case was resolved by judgment on the pleadings. In its Opinion, the Tennessee Supreme Court articulated the applicable standard of review as follows:

We review de novo a motion for judgment on the pleadings. *Mortg. Elec. Registration Sys., Inc. v. Ditto*, 488 S.W.3d 265, 275 (Tenn. 2015); *see also* Tenn. R. Civ. P. 12.03. We accept all the non-moving party's factual allegations as true and draw all reasonable inferences in that party's favor. *King*, 354 S.W.3d at 709. A judgment on the pleadings for a defendant should be affirmed when the plaintiff "can prove no set of facts" in support of a claim entitling her to relief. *Young v. Barrow*, 130 S.W.3d 59, 63 (Tenn.

---

[1] Additional briefing and oral argument were conducted for these issues on remand.

App. 2003); *see also McClenahan v. Cooley*, 806 S.W.2d 767, 769 (Tenn. 1991) (stating that, under these circumstances, the issue is whether "the Plaintiff's complaint states a cause of action that a jury should have been entitled to decide").

We also review de novo questions of statutory interpretation like the one presented here. *See State v. Marshall*, 319 S.W.3d 558, 561 (Tenn. 2010). In interpreting statutory provisions, our role is to determine how a reasonable reader would have understood the text at the time it was enacted. *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022). We undertake that task by considering the statutory text "in light of 'well-established canons of statutory construction.' " *Id*. (quoting *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)).

We give terms their natural and ordinary meaning in their statutory context unless the statute defines them. *Mills v. Fulmarque, Inc.*, 360 S.W.3d 362, 368 (Tenn. 2012). When a statute uses a common-law term without defining it, we assume the enacting legislature adopted the term's common-law meaning "unless a different sense is apparent from the context, or from the general purpose of the statute." *In re Estate of Starkey*, 556 S.W.3d 811, 817 (Tenn. Ct. App. 2018) (quoting *Lively v. Am. Zinc Co. of Tenn.*, 137 Tenn. 261, 191 S.W. 975, 978 (1917)). Statutes "in derogation of the common law," moreover, must be "strictly construed and confined to their express terms." *Moreno v. City of Clarksville*, 479 S.W.3d 795, 809 (Tenn. 2015) (quoting *Doyle v. Frost*, 49 S.W.3d 853, 858 (Tenn. 2001)).

*Lawson*, 661 S.W.3d at 58-59.

The Tennessee Supreme Court also discussed the GTLA and the public duty doctrine as follows:

At common law, the State and its political subdivisions were generally immune from suit under the doctrine of sovereign immunity. *Hughes v. Metro. Gov't of Nashville & Davidson Cnty.*, 340 S.W.3d 352, 360-61 (Tenn. 2011). This "doctrine has been a part of Tennessee jurisprudence for well over one hundred years." *Id*. at 360. It has its roots in feudal England, where "the King . . . was answerable to no court." *Moreno*, 479 S.W.3d at 809 (quoting *Hawks v. City of Westmoreland*, 960 S.W.2d 10, 14 (Tenn. 1997)).

Yet sovereign immunity does not bar suit when the government has "specifically consent[ed]" to be sued. *Hughes*, 340 S.W.3d at 360. Our

-5-

Constitution empowers the legislature to "waive the protections of sovereign immunity," *id*., by providing that "[s]uits may be brought against the State in such manner and in such courts as the Legislature may by law direct," Tenn. Const. art. I, § 17.

In 1973, our General Assembly exercised this authority by passing the Act. *Hughes*, 340 S.W.3d at 360. The Act reiterated the general rule of sovereign immunity. *See* Tenn. Code Ann. § 29-20-201. But it also removed the immunity of the State's political subdivisions "in limited and enumerated instances for certain injuries." *Hawks*, 960 S.W.2d at 14. In particular, the Act lifted immunity for "injur[ies] proximately caused by a negligent act or omission of any employee within the scope of his employment." Tenn. Code Ann. § 29-20-205 (2012); *see also id*. § 29-20-310(a) (2012 & Supp. 2013) (providing that a court "must first determine that the employee's . . . acts were negligent" before "holding a governmental entity liable for damages").

That removal of immunity is subject to certain exceptions. If the injury at issue "arises out of" one of the acts specified in Tennessee Code Annotated section 29-20-205(1)-(9), then immunity still holds. *Id*. § 29-20-205; *see also Limbaugh v. Coffee Med. Ctr.*, 59 S.W.3d 73, 84 (Tenn. 2001). Those enumerated acts include, among other things, discretionary decisions and some intentional torts. Tenn. Code Ann. § 29-20-205(1)-(9).

Because governmental immunity is narrower under the Act than under the common law, the Act is "in derogation of the common law" and must be "strictly construed and confined to [its] express terms." *Moreno*, 479 S.W.3d at 809 (quoting *Doyle*, 49 S.W.3d at 858); *see also Hughes*, 340 S.W.3d at 361 ("[S]tatutes which waive immunity of the [governmental entity] from suit are to be construed strictly in favor of the sovereign." (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951))). The Act "expressly incorporate[s]" this rule of strict construction. *Ezell v. Cockrell*, 902 S.W.2d 394, 399 (Tenn. 1995). It provides that "[w]hen immunity is removed by this chapter any claim for damages must be brought in strict compliance with the terms of this chapter." Tenn. Code Ann. § 29-20-201(c).

Even when the Act removes immunity, governmental entities still may be immune under the public-duty doctrine. We previously held that the Act did not abolish that common-law doctrine, which shields governmental entities and their employees from "suits for injuries that are caused by the public employee's breach of a duty owed to the public at large." *Ezell*, 902

-6-

S.W.2d at 397, 400-01.  But the public-duty doctrine has exceptions too, including one known as the special-duty exception.  That exception applies in three circumstances, including, as relevant here, when "the plaintiff alleges a cause of action involving intent, malice, or reckless misconduct."  *Id*. at 402.

When we consider whether a governmental entity is immune from suit, the threshold question is whether immunity has been removed *under the Act*.  We need not consider the public-duty doctrine or its exceptions unless we first conclude that the Act waives immunity.  *See Chase v. City of Memphis*, 971 S.W.2d 380, 385 (Tenn. 1998).

*Lawson*, 661 S.W.3d at 59-60 (footnote omitted).

We first address whether Plaintiffs sufficiently preserved and presented arguments (a) that they sufficiently alleged ordinary negligence in addition to gross negligence and recklessness and (b) whether Tenn. Code Ann. §§ 7-86-320 and 29-20-108 remove immunity for certain claims against ECD-911.  In their brief, Hawkins County and the EMA state that "[a]t no time in the Trial Court, Court of Appeals or Supreme Court have the Plaintiffs argued that the Motions for Judgment on the Pleadings should be denied based on claims of ordinary negligence."  Defendants point to language contained in a response Plaintiffs filed below in opposition to judgment on the pleadings in which Plaintiffs stated:

The Plaintiffs have not alleged that the Defendants failed to take reasonable action to prevent the deadly outcome of the emergency situation, i.e. mere negligence.  The Plaintiffs allege that the Defendants ***failed to take any action at all*** regarding the emergency situation, i.e. grossly negligent or reckless behavior, which directly led to the death of Decedent.

According to ECD-911, Plaintiffs have "disavowed" any claim of ordinary negligence.  On the other hand, ECD-911 "concedes that the applicability of Tenn. Code Ann. §§ 7-86-320 and 29-20-108 has been raised in the pleadings and properly preserved as an issue for consideration upon appeal."  ECD-911's concession is appropriate in light of the record.  That leaves the question of whether Plaintiffs preserved an argument based on ordinary negligence.

In our previous opinion, we noted that "the Trial Court held that Plaintiffs' claims of simple negligence removed Defendants' immunity (at least before application of the public duty doctrine)."  *Lawson v. Hawkins Cnty.*, No. E2020-01529-COA-R3-CV, 2021 WL 2949511, at *6 (Tenn. Ct. App. July 14, 2021).  Indeed, throughout this case, Plaintiffs

have attempted to thread the needle of the interplay between the GTLA and the public duty doctrine. Both the Trial Court and this Court have recognized that Plaintiffs' claims include ordinary negligence. We disagree that Plaintiffs have "disavowed" ordinary negligence. Instead, they have made alternative arguments, which they are allowed to do. We conclude that Plaintiffs have sufficiently preserved and presented arguments both as to their sufficiently alleging ordinary negligence and as to whether Tenn. Code Ann. §§ 7-86-320 and 29-20-108 remove immunity for certain claims against ECD-911.

We next address whether Plaintiffs' complaint sufficiently alleged ordinary negligence. The Tennessee Supreme Court has defined negligence as follows:

> This Court has long defined negligence as the "want of ordinary care." *Inter-City Trucking Co. v. Daniels*, 181 Tenn. 126, 178 S.W.2d 756, 757 (1944) (quoting *Craig v. Stagner*, 159 Tenn. 511, 19 S.W.2d 234, 236 (1929), *abrogated on other grounds by McIntyre v. Balentine*, 833 S.W.2d 52, 54 (Tenn. 1992)). To prove negligence, a plaintiff must establish "(1) a duty of care owed by the defendant to the plaintiff; (2) a breach of that duty; and (3) a causal relation between the injury to the plaintiff and the defendant's breach of his duty of care." *Shouse v. Otis*, 224 Tenn. 1, 448 S.W.2d 673, 676 (1969); *see also McClenahan*, 806 S.W.2d at 774 (specifying that a plaintiff must prove "an injury or loss," "causation in fact," and "proximate, or legal, cause"). Negligence does not require proof that the defendant intended to harm the plaintiff or of any other mental state. To the contrary, this Court has explained that "[w]illfulness and negligence are the opposite of each other; the former signifying the presence of intention, and the latter its absence." *Memphis St. Ry. Co. v. Roe*, 118 Tenn. 601, 102 S.W. 343, 346 (1907) (quoting *Cleveland, Cincinnati, Chi. & St. Louis Ry. Co. v. Miller*, 149 Ind. 490, 49 N.E. 445, 449 (1898)), *abrogated on other grounds by McIntyre*, 833 S.W.2d at 54.

*Lawson*, 661 S.W.3d at 61.

To determine whether Plaintiffs sufficiently alleged ordinary negligence, we look to their complaint. In their complaint, Plaintiffs alleged, in part, as follows:

> 25. Mr. Lawson was killed due to the reckless and grossly negligent conduct of all Defendants and their employees or agents as named herein, including but not limited to:

> a. Deputy Godsey's blatant failure to follow any protocol in assessing the situation, discussing options to close the Highway to

-8-

prevent accidents, failure to communicate the danger to other motorists, conscious disregard to the unjustifiable and substantial risk of a vehicle falling off the mountain due to the collapse, and failure to take any action to stop traffic;

b.      ECD-911 employees' failure or blatant refusal to obtain more information, make additional dispatch calls to any fire department or other emergency personnel to report the situation on Highway 70, or follow proper protocol regarding unsafe road conditions.

c.      EMA employees' or agents' failure or blatant refusal to take any action at all other than to communicate a downed utility pole to the Utility Company, obtain any additional information, respond to the scene, assess the situation, or take any helpful action whatsoever.

*** 

27.     All Defendants were on notice and consciously aware that Highway 70 had an active mudslide, severe road hazard, trees in the road and a power pole was destabilized due to the mudslide for almost an hour before any attempt, whatsoever, was made to close Highway 70.

*** 

30.     This clear deviation from the standard of care that any ordinary person would exercise under the circumstances—said action being performed by an ordinary citizen forty-five minutes earlier despite no law enforcement or emergency dispatch training of any kind—constitutes reckless conduct and gross negligence on the part of the Defendants' employees.

*** 

32.     The aforementioned actions constitute gross negligence and reckless behavior on the part of the Defendants and their employees because of their extreme dereliction in the operation of the Defendants' emergency procedures and protocols, and said neglect substantially and unjustifiably increased the risk that harm would occur to any motorist traveling southbound on Highway 70.  Defendants' actions, through their employees and agents, was done with utter unconcern for the safety of these motorists and with reckless disregard for the rights, safety, and livelihood of others

such as to amount to conscious indifference to the clear risk that would be confirmed later when Mr. Lawson and Mr. Mabe's vehicles fell off the mountain.

33.     The aforementioned dereliction of duty on the part of the Defendants' employees, officers and agents was the result of, in part (but not limited to):

    a.     Blatant and rampant nepotism amongst the Defendants;

    b.     Failure to adequately train employees regarding proper protocol and procedures;

    c.     Failure to maintain adequate or proper protocols and procedures to deal with emergency situations such as the situation that occurred on February 21, 2019; and/or

    d.     Failure to maintain proper licensing under state law and regulations.

34.     Immunity for all Defendants has been removed for this action pursuant to the provisions of T.C.A. § 29-20-203, -205, -108, etc., and said negligence constitutes negligence *per se* under these and other relevant statutes.

In their complaint, Plaintiffs heavily emphasized gross negligence and recklessness. However, a fair reading of the complaint reveals claims of ordinary negligence as well. Plaintiffs alleged a litany of inactions, omissions, and dereliction on the part of Defendants in their response to the road washout that led to Decedent's death. These allegations, which remain mere allegations at this stage, claim a duty, a breach of that duty, and a causal relationship between Plaintiffs' injuries and the breach of duty required for a claim of ordinary negligence. Plaintiffs did not have to and did not restrict themselves to a single approach in their complaint. We know of nothing, including the Tennessee Supreme Court's opinion in *Lawson*, that prohibits Plaintiffs from having alleged ordinary negligence, gross negligence, and recklessness based upon the same set of alleged facts. We hold that Plaintiffs sufficiently alleged ordinary negligence in their complaint.

We next address whether Tenn. Code Ann. §§ 7-86-320 and 29-20-108 remove immunity for certain claims against ECD-911. Tenn. Code Ann. § 7-86-320 states as follows:

(a) If a provider of an IP-enabled service offers 911 or E911 services and such provider complies with federal communication commission Order #05-116, adopted May 19, 2005, that provider, its officers, directors, employees, vendors, and agents, shall have immunity or other protection from liability of a scope and extent that is not less than the scope and extent of immunity or other protection from liability that any incumbent local exchange carrier in the provider's service area, and its officers, directors, employees, vendors, or agents, have under applicable law, whether through statute, judicial decision, tariffs filed by the local exchange company, or otherwise, including in connection with an act or omission involving the release of subscriber information related to the emergency calls or emergency services to a public safety answering point (PSAP), emergency medical service provider, emergency dispatch provider, public safety, fire service, or law enforcement official, or hospital emergency or trauma care facility.

(b) A person using an IP-enabled service that offers 911 or E911 services pursuant to this section shall have immunity or other protection from liability of a scope and extent that is not less than the scope and extent of immunity or other protection from liability under applicable law in similar circumstances of a person using 911 or E-911 service that is not provided through an IP-enabled voice service.

(c) In matters related to IP-enabled 911 and E911 communications, a PSAP, and its employees, vendors, agents, and authorizing government entity, if any, shall have immunity or other protection from liability of a scope and extent that is not less than the scope and extent of immunity or other protection from liability under applicable law accorded to the PSAP, employees, vendors, agents, and authorizing government entity, respective, in matters related to 911 or E-911 communications that are not provided via an IP-enabled service.

(d)(1) Emergency communications districts shall be immune from suit or liability for civil claims arising from the actions or omission of emergency communications district personnel in processing emergency calls, except that claims for recklessness or intentional misconduct in processing emergency calls shall be permitted, but damages for such claims shall not exceed actual damages or the maximum award that may be awarded per claimant by the Tennessee claims commission.

(2) A provider or user of 911 services or next generation 911 services, a public safety answering point, and the officers, directors, employees, vendors, agents, and authorizing government entity, if any, of such provider, user, or public safety answering point, shall have immunity and protection from liability under federal and state law to the extent provided in subdivision (d)(1) with respect to:

(A) The release of subscriber information related to emergency calls or emergency services;

(B) The use or provision of 911 services, E911 services, or next generation 911 services; and

(C) Other matters related to 911 services, E911 services, or next generation 911 services.

(3) A dealer or provider of telecommunications service and other services, a user of such services, and a public safety answering point, and the officers, directors, employees, agents, vendors, and authorizing government entity, if any, involved in providing 911 service, shall not be liable for:

(A) Any civil claim, damage, or loss caused by an act or omission in the design, development, installation, maintenance, or provision of 911 service;

(B) The release of subscriber information related to emergency calls or emergency services; and

(C) Other matters related to the provision of 911 service.

Tenn. Code Ann. § 7-86-320 (West eff. January 1, 2015).

Tenn. Code Ann. § 29-20-108, the other statute relied on by Plaintiffs against ECD-911, provided:

(a) Emergency communications district boards, established in § 7-86-105, and the members of such board shall be immune from any claim, complaint or suit of any nature which relates to or arises from the conduct of the affairs of the board except in cases of gross negligence by such board or its members. The finding of the general assembly is that the service of such boards and the members thereof is so critical to the safety and welfare of the citizens of this state that such absolute and complete immunity is required for the free exercise of the duties of such boards by the members.

(b) Such immunity shall also extend to employees of an emergency communications district, and county and municipal governments for the acts or omissions of employees that manage, supervise, or perform 911 emergency communications service as communicators or dispatchers; provided, that all such employees shall attain and maintain training requirements as may be required by law.

Tenn. Code Ann. § 29-20-108 (West January 1, 2015 to December 31, 2020).[2]

---

[2] The statute was amended effective January 1, 2021, 2020 Tennessee Laws Pub. Ch. 575 (S.B. 1958), to

With respect to Tenn. Code Ann. § 7-86-320, the immunity provided by the statute is removed for reckless and intentional acts but "processing" emergency calls is left undefined. This is significant because Plaintiffs' allegations do not concern the "processing" of an emergency call, as such. For instance, Plaintiffs' claim against ECD-911 is not based on an alleged technical blunder or mishap. Instead, their claim is based on the conduct of ECD-911 in response to the emergency call at issue. Under these circumstances, Tenn. Code Ann. § 7-86-320 and its immunity for "processing" calls is inapplicable to the facts at hand.

Tenn. Code Ann. § 29-20-108, meanwhile, is broader in application. Plaintiffs have alleged gross negligence on the part of Defendants, including ECD-911. Under an unforced and natural reading of the statute so as "to determine how a reasonable reader would have understood the text at the time it was enacted[,]" *Lawson*, 661 S.W.3d at 59, Tenn. Code Ann. § 29-20-108 removes immunity for emergency communication district boards like ECD-911 in cases of gross negligence.[3] ECD-911 acknowledges that Tenn. Code Ann. § 29-20-108 sometimes removes governmental immunity for gross negligence but asserts that "ordinary negligence and gross negligence do not establish a special duty sufficient to overcome the public duty doctrine." However, that skips a step in the inquiry. As explained by our Supreme Court, the first question is whether governmental immunity is removed. Only if immunity is removed do we consider whether the public duty doctrine applies.

The Tennessee Supreme Court explained in *Lawson* that when the GTLA removes immunity for negligence, it does so for ordinary negligence only. However, Tenn. Code Ann. § 29-20-108 specifically removes immunity for emergency communication district boards in cases of gross negligence. The statute is explicit on this point. Through section -108 of the GTLA, the State has consented to waive its sovereign immunity in cases such as Plaintiffs' claim of gross negligence against ECD-911. We conclude that, under Tenn. Code Ann. § 29-20-108, Plaintiffs' claim of gross negligence removes immunity for ECD-911 at this judgment on the pleadings stage.

The final issue we address is whether the public duty doctrine independently bars any of Plaintiffs' claims that may proceed under applicable statutory law. On this issue,

---

state among other things that "[t]he emergency communication district, state, county, and municipality are not liable for any civil damages or subject to a civil suit of any nature for employees who answer 911 emergency calls and employees who are recently hired, except in cases of gross negligence or willful misconduct." Tenn. Code Ann. § 29-20-108(e).

[3] Tenn. Code Ann. § 29-20-108 connects the gross negligence standard to whether 911 dispatchers had attained and maintained certain training requirements. No such evidence of training or lack thereof has been produced at this judgment on the pleadings stage.

Plaintiffs take aim at the public duty doctrine itself. They criticize the barrier it poses to litigants who are forced to navigate the doctrine's interplay with the GTLA. We are not unsympathetic. However, we note the statement by now Chief Justice Kirby in her separate concurring opinion in *Lawson* that "[t]he question of whether we should continue to apply the public duty doctrine and the special duty exception was not raised as an issue in this appeal, so addressing it here would not be appropriate." *Lawson*, 661 S.W.3d at 70. Chief Justice Kirby expressed hope that, in a future case, the Tennessee Supreme Court could "look squarely at whether we should continue to adhere to *Ezell*, limit application of the public duty doctrine and the special duty exception, or discontinue application of those common law principles in deference to the statutes governing immunity." *Id*. In the meantime, the public duty doctrine remains a part of Tennessee law.

The effect of Plaintiffs' claims of ordinary negligence is to waive Defendants' immunity under the GTLA as to ordinary negligence. Defendants' duties regarding how to respond to the highway washout were duties owed to the public at large, not just Decedent individually. Therefore, absent a special duty exception, the public duty doctrine bars Plaintiffs' ordinary negligence claims notwithstanding the waiver of immunity under the GTLA. Plaintiffs argue nevertheless that the third special duty exception applies since they allege gross negligence and recklessness in addition to ordinary negligence. Given the Tennessee Supreme Court's *Lawson* opinion, Plaintiffs may not smuggle a claim of ordinary negligence past the public duty doctrine by relying on gross negligence or recklessness when those gross negligence claims would not have lifted governmental immunity in the first place. In *Lawson*, the Tennessee Supreme Court was definitive in its ruling that when the GTLA lifts immunity for negligence, it does so for ordinary negligence only. As no special duty exception applies to Plaintiffs' claims of ordinary negligence against Defendants, those claims are barred by the public duty doctrine. In short, Plaintiffs' gross negligence claims against Hawkins County and the EMA fail because immunity has not been removed while, at the same time, Plaintiffs' negligence claims against Defendants fail because of the public duty doctrine. Thus, Plaintiffs can prove no set of facts that would entitle them to relief against Hawkins County or the EMA. We therefore affirm the Trial Court's grant of judgment on the pleadings to Hawkins County and the EMA.

ECD-911 is situated differently, however. As discussed above, Tenn. Code Ann. § 29-20-108 specifically removes immunity for emergency communication district boards in cases of gross negligence. Plaintiffs have alleged gross negligence against ECD-911, which serves to waive immunity under section -108. The next step in the inquiry is whether the public duty doctrine bars Plaintiffs' claim against ECD-911 notwithstanding the waiver of immunity. Plaintiffs assert the third special duty exception, which applies for acts of intent, malice, or reckless misconduct. In its Opinion, the Tennessee Supreme Court explained the difference between negligence on one hand and gross negligence and recklessness on the other:

-14-

Recklessness, by contrast [to negligence], does require proof of the defendant's subjective state of mind. We have explained that "recklessness contains an awareness component similar to intentional conduct which is not demanded of negligence." *Doe 1 ex rel. Doe 1 v. Roman Cath. Diocese of Nashville*, 154 S.W.3d 22, 38 (Tenn. 2005). Specifically, the defendant must "be aware of, but consciously . . . disregard, a substantial and unjustifiable risk." *Id*. at 39; *see also Hodges v. S.C. Toof & Co.*, 833 S.W.2d 896, 901 (Tenn. 1992) (same). This requirement "imposes a significantly higher burden than is required for mere negligence actions." *Doe 1*, 154 S.W.3d at 39. The "recklessness analysis" is therefore "something unique which differs from" an "analys[i]s based strictly on . . . negligence." *Id*. at 38. Tennessee courts had recognized this distinction between negligence and recklessness before the Act was adopted. *See, e.g., Wells v. S. Ry. Co.*, 1 Tenn. App. 691, 700 (Tenn. Ct. App. 1926) (distinguishing negligence from "recklessness or wantonness" and explaining that the latter indicate a "willingness to inflict the impending injury, or willfulness in pursuing a course of conduct which will naturally or probably result in disaster").

Gross negligence likewise requires proof of the defendant's subjective mental state. *See, e.g., Olsen v. Robinson*, 496 S.W.2d 462, 463 (Tenn. 1973) (requiring proof of "willful or wanton misconduct" to prove gross negligence and distinguishing such conduct from "ordinary negligence"), *abrogated on other grounds by Hudson v. Gaitan*, 675 S.W.2d 699, 703 (Tenn. 1984); *see also Craig*, 19 S.W.2d at 236 (defining "gross negligence" as "[s]uch entire want of care as would raise a presumption of a conscious indifference to consequences"). As we put it in *Craig*, gross negligence requires "more than . . . want of ordinary care—a common definition of negligence." 19 S.W.2d at 236. The required "mental attitude" is instead "one of indifference to injurious consequences, conscious recklessness of the rights of others." *Id*.

This distinction between gross negligence and negligence led Tennessee courts to attach different legal consequences to grossly negligent behavior. Before adopting a comparative-fault system, we disallowed contributory negligence as a defense to grossly negligent conduct, "unless the contributory negligence [was] also gross or wanton." *Stinson v. Daniel*, 220 Tenn. 70, 414 S.W.2d 7, 10 (1967); *Ellithorpe v. Ford Motor Co.*, 503 S.W.2d 516, 521-22 (Tenn. 1973) (similar), *abrogated by McIntyre*, 833 S.W.2d at 54. Punitive or exemplary damages are permissible in a negligence action only if the negligence is "so gross and wanton as to 'raise a presumption of conscious indifference to consequences.' " *Se. Aviation,*

*Inc. v. Hurd*, 209 Tenn. 639, 355 S.W.2d 436, 447 (1962) (quoting *Inter-City Trucking Co.*, 178 S.W.2d at 757).  And under our former premises-liability rules, we dismissed a complaint that "allege[d] no more than ordinary negligence on the [defendant's] part" because the defendant host owed the plaintiff guest "no duty except to refrain from willfully injuring him or from committing negligence so gross as to amount to willfulness."  *Olsen*, 496 S.W.2d at 463.  These cases underscore that, under Tennessee's common law, negligence and gross negligence are distinct concepts.

***

In sum, Tennessee courts have consistently defined gross negligence and recklessness in a manner distinct from ordinary negligence.  The term "negligence" in section -205 is therefore best understood to mean only ordinary negligence, not gross negligence or recklessness.  If there were any doubt on this point, the strict-construction rule that applies here would require us to resolve that doubt in favor of governmental immunity.  "[C]onfined to [its] express terms," *Moreno*, 479 S.W.3d at 809, section -205 waives immunity only for employee acts that constitute ordinary negligence.

*Lawson*, 661 S.W.3d at 61-63 (footnote omitted).

In its analysis, the Tennessee Supreme Court contrasted ordinary negligence from gross negligence and recklessness.  The Tennessee Supreme Court explained that, as opposed to ordinary negligence, gross negligence and recklessness require proof of a defendant's mental state.  Here, Plaintiffs have alleged extreme dereliction, utter unconcern, and conscious indifference on the part of ECD-911 in its response to the emergency call at issue.  In our judgment, these allegations by Plaintiffs are inclusive of the intent, malice, or reckless misconduct necessary to establish the third special duty exception to the public duty doctrine.

We reiterate that Plaintiffs' allegations remain just that at this judgment on the pleadings stage.  We take no position on the underlying merits.  Nevertheless, Plaintiffs have successfully alleged that ECD-911's governmental immunity is removed under Tenn. Code Ann. § 29-20-108 for gross negligence and that the public duty doctrine does not bar their claim for gross negligence as the third special duty exception applies.  Thus, Plaintiffs have alleged facts against ECD-911 which could possibly entitle them to relief.  We, therefore, hold that the Trial Court erred in granting ECD-911 judgment on the pleadings. We reverse the Trial Court's judgment as to ECD-911 and remand for Plaintiffs' case to proceed against ECD-911.

## Conclusion

We reverse the Trial Court's grant of judgment on the pleadings to Hawkins County Emergency Communications District Board. Otherwise, we affirm the judgment of the Trial Court. This cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion. The costs on appeal are assessed against the Appellee, Hawkins County Emergency Communications District Board.

_____
D. MICHAEL SWINEY, CHIEF JUDGE